Philip F. **BOYNTON**, Plaintiff,

v.

**Rea Forhan PEDRICK**, as Administratrix of the Estate of William J. Pedrick, Deceased, late Federal Collector of Internal Revenue in and for the Second New York District, Defendant.

United States District Court
S. D. New York.

Oct. 29, 1954.

Gray & Wythe, New York City, for plaintiff.

Paul W. Williams, U. S. Atty., New York City, for defendant.

EDWARD P. MURPHY, District Judge.

Defendant moves for a directed verdict on the issue of the correctness of the assessed deficiencies and the incident interest. All agree that the correctness of the assessed penalties involves a question of fact for the jury's determination.

The material facts are relatively simple. Plaintiff is in the business of buying, processing and selling sheepskins. Over ninety per cent of his business is done on credit. He maintained his books on an accrual basis with one exception. Inventories were taken, used by his accountant in preparing a yearly profit and loss statement, but were not entered in the regular books of account.

The plaintiff insists that he had the right to file returns in 1943 and 1944 on a cash receipts and disbursements basis. The Commissioner recomputed his income on an accrual basis and assessed the deficiencies in dispute. The amount of income and the tax due under the respective methods of computation are conceded.

The method of accounting to be used in computing taxable income is governed by Section 41 of the Internal Revenue Code 1939, 26 U.S.C.A. § 41. It provides:

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *"

Apart from the question of what method of accounting the plaintiff actually used, and assuming here that the books were kept on a cash receipts and disbursements basis, the power of the Commissioner to recompute the income using a different accounting method depends, insofar as this statute is concerned, on a showing that "the method employed does not clearly reflect the income." On the face of it this appears to be a question of fact.

The plaintiff, relying on language in Osterloh v. Lucas, 9 Cir., 1930, 37 F.2d 277, which was echoed in a per curiam opinion in Glenn v. Kentucky Color & Chemical Co., 6 Cir., 1951, 186 F.2d 975, 977, reads the statute as requiring only that the taxpayers books "shall be kept fairly and honestly." This language has been rejected in the Ninth Circuit, which gave it birth in Herberger v. Commissioner, 1952, 195 F.2d 293. It is not the law in this circuit. Caldwell v. Commissioner, 2 Cir., 1953, 202 F.2d 112.

■ Section 41 must be read in conjunction with Section 22(c), 26 U.S.C. A. § 22(c), which governs the use of inventories in computing taxable income. It provides:

"Inventories. Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income."

■ Pursuant to this clear delegation of authority the Commissioner has promulgated Reg. 111, Sec. 29.22(c)–1:

"Need of inventories. In order to reflect the net income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the production, purchase, or sale of merchandise is an income-producing factor. * * *".

That this regulation is within the delegated power of the Commissioner is not subject to doubt. He has been given broad discretion in this area. Lucas v. Kansas City Structural Steel Co., 1930, 281 U.S. 264, 50 S.Ct. 263, 74 L.Ed. 848. The report of the Ways and Means Committee accompanying the Revenue Act of 1918, which first included this section, expressly indicated that in many cases inventories were necessary to determine net income and specifically mentioned "manufacturing and merchandising concerns." H.R.Rep. 767, 65th Cong., 2nd Sess., p. 4. The regulation was first promulgated under the 1918 Act and has been included without change in every set of regulations issued since that time. The statute has been reenacted continuously without change. Under these circumstances the regulations have received the approval of the Congress and approach the statute itself in force and effect. See Helvering v. R. J. Reynolds Tobacco Co., 1939, 306 U.S. 110, 59 S. Ct. 423, 83 L.Ed. 536; Lykes v. United States, 1952, 343 U.S. 118, 72 S.Ct. 585, 96 L.Ed. 791.

Treasury Regulation 111, Sec. 29.41–a states:

" * * * in any case in which it is necessary to use an inventory, no method of accounting in regard to purchases and sales will correctly reflect income except an accrual method. * * *"

■■ Both regulations apply here. If they are valid the deficiency was properly assessed. The effect of 29.22 (c)–1 as a legislative rather than an interpretive regulation is quite clear. The effect of 29.41–2 is not so clear. Section 22(c) requires the use of inventories "Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income * * *", but Section 41 speaks in terms of an ultimate fact: "if the method employed does not clearly reflect the income * * *." The relationship between the two sections is critical. The power to require the use of a particular method of accounting to "clearly reflect income" is necessarily concomitant with the power to require the use of inventories "in order clearly to determine the income", if the use of inventories and a particular method of accounting are inextricably intertwined. Caldwell v. Commissioner demonstrates this necessary connection:

"The use of inventories in computing income results in stating the expenses of a year's operations in terms of the cost of the goods actually sold during that year. Thus the profit from these operations will be stated accurately only if the income from all sales made during the year is taken into consideration. This requires use of the accrual method of determining income, since the cash receipts method obviously does not reflect the actual sales made during the year where,

as in the present case, a substantial part of these sales * * * is made on credit." 202 F.2d 114.

I might add that the use of inventories in computing income also requires the accrual method of accounting in determining the cost of goods sold if a substantial part of the purchases is made on credit as is done here.

The argument is simply that the power of the Commissioner to require the use of inventories in computing income carries with it the power to require the use of a method of accounting in which the use of inventories has substance and meaning. Both the Herberger and the Caldwell cases sustained the validity of Regulation 29.41–2. It is not quite clear whether in those cases the cash receipts and disbursements method was held to "not clearly reflect the income" as a matter of law or on the basis that a correct factual finding had been made by the Tax Court. In my opinion the cash receipts method as a matter of law does not clearly reflect income here. The regulation requires the use of an accrual method. The validity of the regulations is a question of law.

■ Viewing the problem from the opposite direction, the Caldwell case interprets Section 41 to require that income be reflected "with as much accuracy as standard methods of accounting practice permit." In a business which consists of entirely the purchase, processing and sale of a commodity, in which the overwhelming number of purchases and sales are made on credit, an accrual method to reflect income is the standard method of accounting. The business world would accept no other. Plaintiff's own accountant testified that not using inventories in the books of a mercantile business is unsound accounting. Indeed, here the taxpayer prepared a profit and loss statement using the accrual method in order to obtain credit from banks and suppliers of raw materials. He and the persons with whom he dealt in his business recognized that the accrual method would more accurately reflect his income. I do not mean to say that the interpretation of Section 41 should turn on conflicts between accountants with regard to the relative accuracy of (subtle) accounting nuances. But where as here, there is only one standard accounting practice, which overwhelmingly surpasses the cash receipts and disbursements method in accuracy, an accrual method of accounting is required in reporting income as a matter of law.

■■ Plaintiff attacks the use of inventories and the accrual method from a constitutional standpoint. These contentions can be disposed of quickly. Plaintiff contends that the computation of taxable income on the accrual basis is not sanctioned under the XVI Amendment, at least if the taxpayer does not consent. He contends that requiring the use of inventories is unconstitutional because it taxes "the dubious, unliquidated value of inventory on hand." Taxable income is constitutionally broader than the actual receipt of cash. Crane v. Commissioner, 1947, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301; Helvering v. Horst, 1940, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Douglas v. Wilcuts, 1935, 296 U.S. 1, 56 S.Ct. 59, 80 L. Ed. 3.

Taxing income on the accrual basis is constitutional or not, independent of the consent of the taxpayer. The XVI Amendment granted certain power to the Federal Government. As a matter of power, this included the right to require an accrual method or it did not, without reference to the individual taxpayer's choice.

Plaintiff misconceives the use of inventory. The inventory is not taxed. It is used to compute the cost of goods actually sold.

The motion for a directed verdict is granted.