ESTATE of John IVERSON et al.,
Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

Mardrid Reite DAVISON, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

ESTATE of John IVERSON, et al., and El-
len Myers and Charlotte Schaeffer, co-
executrices of the Estate of Alvilda
Iverson, Deceased, Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

Ellen MYERS and Charlotte Schaeffer, co-
executrices of the Estate of Alvilda
Iverson, Deceased, Petitioners,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

Nos. 15928–15931.

United States Court of Appeals
Eighth Circuit.

May 9, 1958.

**2**

Joseph A. Maun, St. Paul, Minn. (William R. Busch, Burton G. Weisberg, and Bundlie, Kelly & Maun, St. Paul, Minn., were with him on the brief), for petitioners.

Joseph Kovner, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Lee A. Jackson, A. F. Prescott, and Kenneth E. Levin, Attys., Washington, D. C., were on the brief), for respondent.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

These are petitions to review decisions of the Tax Court (opinion reported

27 T.C. 786) upholding the Commissioner's determination of income tax deficiencies for the years 1947 and 1948 against the Estate of John Iverson,[1] Alvilda Iverson,[2] and Mardrid Davison. The petitions for review were timely. This court has jurisdiction.

The four petitions before us involve common questions of law and fact. The cases were consolidated in the Tax Court and are consolidated here. The tax liability in these cases arises out of the Commissioner's determination that John and Alvilda Iverson and Mardrid Davison, hereinafter called the taxpayers, were required to include as income in their tax returns in the year of sale their share of the credit sales made by four stores engaged in the retail and wholesale selling of electrical appliances, fixtures, and supplies. John and Alvilda Iverson were husband and wife. Mardrid Davison is a daughter of Alvilda Iverson by a former husband. The taxpayers owned three of the stores in partnership in varying proportions. The fourth store was owned by John Iverson individually.

The books of all of the stores were kept upon an accrual basis. At the end of each taxable year adjustments were made eliminating all credit sales. Taxpayers reported only cash sales for income tax purposes. The credit sales were reported for tax purposes in the year collection was made. The stores all used inventories. Costs of goods sold were determined by adding to the beginning inventory the cost of merchandise purchased for sale, plus freight and excise taxes, less purchase discounts and credits, and subtracting the inventory on hand at the end of the year.

Upon audit of the 1947 and 1948 returns, the Commissioner insisted that credit sales made during each year be accounted for as income. All tax liability here involved results from the inclusion of the credit sales as income for the year of sale. Deficiency notices

---

1. John Iverson died while the proceedings were pending in the Tax Court. The executrices of his estate were substituted as petitioners in his place.

2. Alvilda Iverson died while the proceedings were pending in this court. The executrices of her estate were substituted as petitioners in her place.

were mailed on January 30, 1953. This date was more than three years but less than five years after the filing of petitioners' returns for 1947 and 1948. Under the three year statute of limitations, the assessments were barred at the time they were made. Section 275(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 275(a). The Commissioner contends each taxpayer here omitted from gross income an amount includible therein in excess of 25 per cent of gross income stated in the returns, and that hence the five year statute of limitations provided for by section 275(c) is applicable and the assessments were timely.

Taxpayers contend that the five year statute of limitations does not apply for the following reasons:

1. The Commissioner and the Tax Court erred in determining that the uncollected credit sales of the taxpayers' business enterprises should be included as reportable gross receipts for the year in which such sales were made; and

2. Even if the unreported credit sales are treated as income, the Commissioner has failed to prove that there was an omission from gross income on the part of any taxpayer equal to 25 per cent of his reported gross income.

We shall first determine whether the Tax Court correctly decided that the taxpayers were required to account for their credit sales in the year such sales were made.

Section 41 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 41 provides in part that, if the method of accounting regularly employed by the taxpayer "does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income." Section 29.22(c)–1 of Regulations 111, promulgated under the Internal Revenue Code of 1939, provides:

"*Need of inventories.*—In order to reflect the net income correctly, inventories at the beginning and end of each taxable year are necessary in every case in which the produc-

tion, purchase, or sale of merchandise is an income-producing factor.

\* \* \* "

The record shows without dispute that the purchase and sale of merchandise is an income-producing factor in taxpayers' business enterprises. Hence, inventories are required by the regulation. The taxpayers have consistently used inventories in computing their income from their stores, and they do not here contend that they were not required to use inventories. Taxpayers do contend that the Commissioner has failed to establish that the method of accounting used by the taxpayers does not clearly reflect their income.

Section 29.41–2 of Regulations 111 provides in part that "in any case in which it is necessary to use an inventory, no method of accounting in regard to purchases and sales will correctly reflect income except an accrual method." The portion of the regulations just quoted appeared in substantially the same language in section 23 of Regulations 65 promulgated in 1924, and has appeared in all intervening regulations. Treasury regulations and interpretations which are consistent with statute and have remained in effect for a long period of time and have not been altered by congressional action should be given considerable weight. Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 53, 76 S.Ct. 20, 100 L.Ed. 29; Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52; Mertens Law of Federal Income Taxation, Vol. 1, § 320.

The taxpayers make no attack upon the constitutionality or validity of the regulation. They do place considerable reliance upon Goodrich v. Commissioner, 8 Cir., 243 F.2d 686. In that case the taxpayer, without obtaining permission from the Commissioner, changed from a hybrid system of accounting to a strict accrual system. The court held that under the applicable law the taxpayer could not be charged with having impliedly agreed to accept whatever terms or conditions the Commissioner might see fit to impose by way of appropriate

adjustment, and that the Commissioner "cannot, of his own accord, and over the objection of the taxpayer, impose adjustments which change the tax status of income, as previously existing, to a different year." The court also held that the question of whether the taxpayer, under the circumstances, had a right to change his method of accounting without the Commissioner's consent had not been raised in the Tax Court. The court does make the following statement upon which the taxpayers rely (at pages 690–691):

"Moreover, we are not prepared to declare abstractly and absolutely that the requirement of the regulation for the use of an accrual method, where business inventories are involved, leaves no room for the taxpayer lawfully to have employed the hybrid method of accounting and return, which he here did, or no power in the Commissioner to have allowed him, or to be able to require him to continue, to do so, on the facts and elements of his particular situation."

This court in the Goodrich case was not squarely confronted with the problem which we now face, and made no decision on the issue of the Commissioner's right to insist that taxpayers required to use an inventory must report income on an accrual basis. The court stated, "These questions we shall leave to a more specific and a more illuminating setting than the present record provides."

In our present case we are compelled to decide whether, by virtue of section 41, heretofore quoted, the Commissioner is authorized to insist that taxpayers account for credit sales in the year of sale. Section 29.41–2, in clear and unambiguous language, provides that where taxpayers are required to use inventories only the accrual method of accounting will correctly reflect income in regard to purchases and sales. The regulation is in no way inconsistent with the provisions of section 41. The validity of the regulation has been consistently upheld. Herberger v. Commissioner, 9 Cir., 195 F.2d 293, 295; Caldwell v. Commissioner, 2 Cir., 202 F.2d 112, 114; Welp v. United States, D.C.N.D. Iowa, 103 F.Supp. 551, 553, reversed on other grounds 8 Cir., 201 F.2d 128; Boynton v. Pedrick, D.C.S.D.N.Y., 136 F.Supp. 888, affirmed 2 Cir., 228 F.2d 745; Mertens Law of Federal Income Taxation, Vol. 2, § 16.03.

In the Caldwell case, supra, the court states (202 F.2d at page 114):

"* * * The use of inventories in computing income results in stating the expenses of a year's operations in terms of the cost of the goods actually sold during that year. Thus the profit from these operations will be stated accurately only if the income from all sales made during the year is taken into consideration. This requires use of the accrual method of determining income, since the cash receipts methods obviously does not reflect the actual sales made during the year where, as in the present case, a substantial part of these sales— from 90 to 95 per cent according to the finding—is made on credit."

In Boynton v. Pedrick, supra, the court states (136 F.Supp. at page 891):

"* * * Both the Herberger and the Caldwell cases sustained the validity of Regulation 29.41–2. It is not quite clear whether in those cases the cash receipts and disbursements method was held to 'not clearly reflect the income' as a matter of law or on the basis that a correct factual finding had been made by the Tax Court. In my opinion the cash receipts method as a matter of law does not clearly reflect income here. The regulation requires the use of an accrual method. The validity of the regulations is a question of law.

"* * * But where as here, there is only one standard accounting practice, which overwhelmingly surpasses the cash receipts and dis-

bursements method in accuracy, an accrual method of accounting is required in reporting income as a matter of law."

 We agree with the reasoning of the cited cases. The regulation is reasonable and is not inconsistent with the statute upon which it is based. The regulation, under the circumstances here existing, clearly authorizes the Commissioner to insist upon the taxpayers reporting sales upon an accrual basis. The Tax Court committed no error in upholding the Commissioner's determination that the taxpayers' credit sales should be reported as income in the year of sale.

 The record shows that the taxpayers have consistently used the hybrid system of accounting of which the Commissioner now complains. Previous returns have been audited and approved upon the basis of accounting used by the taxpayers in their 1947 and 1948 returns. There is no showing that the taxpayers have not acted in good faith. Nevertheless, the fact that the Commissioner accepted taxpayers' previous returns upon a cash basis without objection does not preclude him from computing the tax on the returns here involved upon an accrual basis. Welp v. United States, supra; Caldwell v. Commissioner, supra.

We now reach the question of whether taxpayers' gross income exceeded their reported gross income by more than 25 per cent.

The Commissioner insists that such excess has been established and that consequently the five year statute of limitations contained in 275(c) is applicable. Such section reads:

"(c) *Omission from gross income.* —If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assess-

ment, at any time within 5 years after the return was filed."

Since the three year statute of limitations had run when the assessments here involved were made, the decisions can be affirmed only if section 275(c) applies.

Taxpayers, citing Wood v. Commissioner, 5 Cir., 245 F.2d 888, urge that the burden is upon the Commissioner to show that the five year limitations is applicable. The Wood case so holds. To the same effect, see Jack Rose v. Commissioner, 24 T.C. 755, 767.

The Commissioner in this case introduced evidence which established that taxpayers had failed to report credit sales and the amount of such sales. The evidence also shows that the taxpayers' books were kept on an accrual basis, and that costs were reported for tax purposes upon the accrual basis. It also clearly appears that all items of cost and allowable deductions were claimed by the taxpayers in their original returns, and that no new or unreported costs were incurred in connection with the credit sales. The Tax Court made the following finding:

"Respondent has established by uncontradicted evidence that credit sales properly includible in gross income were omitted from the gross receipts of the four businesses. We have set forth in our findings the amounts of credit sales unreported by the partnership in the years 1947 and 1948, and have listed the amounts of gross income reported by petitioners in their individual returns and by the businesses in the partnership returns. A comparison of the unreported credit sales figures with the individual returns discloses that each petitioners' proportionate share of the omitted amounts is far in excess of 25 per cent of the gross income stated in each corresponding individual return. \* \* \*"

The parties agree that "gross income," as the term is used in section 275(c), does not mean gross receipts, but, instead,

means gross receipts reduced by cost of goods sold. They also agree that the gross income stated in the taxpayers' returns includes the taxpayers' proportionate share of the partnership gross income. See Rose v. Commissioner, supra, at page 769.

The taxpayers in their brief state:

"The nub of the inquiry in a Section 275(c) case, is stated in H. Leslie Leas v. Commissioner, 23 T.C. 1058 (1955) to be as follows:

" 'To determine whether or not section 275(c) is applicable in any year it is necessary to determine two amounts: (1) The amount of gross income "stated in the return"; and (2) the amount omitted from gross income which is "properly includible therein." '

"With respect to the first of these two items, that is, the amount of gross income stated in the return, it has been consistently held that the amount which the taxpayer stated in his return is controlling and is the amount to be used in determining the application of Section 275(c) even though that amount is incorrect by reason of an overstatement or an understatement of cost of goods sold in the return. Carew v. Commissioner, 215 F.2d 58 (6 Cir. 1954): H. Leslie Leas v. Commissioner, supra."

The Commissioner agrees that the amounts of gross income reported in the returns are established amounts, and can not be changed by either party for the purposes of section 275(c).

■ Taxpayers urge that, in determining the amount of gross income properly includible in the return, it is necessary to compute not only the gross receipts, but that actual cost of goods sold should also be computed and deducted from gross receipts. Taxpayers offer testimony to the effect that all costs of goods sold were not deducted in determining gross income. Taxpayers state that costs, such as expediting shipments, warehousing, conditioning, taxes on merchandise, advertising, and similar items, which properly constitute a part of the cost of goods sold, were not deducted as such costs, but, instead, were claimed by the taxpayers in their tax returns as other deductions below line 13 of the returns. It is taxpayers' contention that, because such costs were not deducted from gross receipts in their original returns, the Commissioner can not rely upon the returns properly reflecting the cost of goods, and that the Commissioner in making the adjustments must establish the correct amounts of the cost of goods that are properly deductible from gross receipts.

Taxpayers offer testimony of an economist to support their contention that the cost of goods included the type of expenditures heretofore referred to and listed by the taxpayers as other deductions. The economist further testified that an omission occurs only when correct gross income exceeds reported gross income.

The Commissioner's position is that he has accepted the taxpayers' cost of goods sold as reported, and that he is entitled to accept such cost as reported by the taxpayers. The Commissioner also contends that parts of the various items, which the taxpayers now wish to allocate to cost of goods sold, are not reflected as cost of goods sold in the taxpayers' books; and that the propriety and amount of such deductions as an item of cost of goods sold would be dependent upon cost analysis and accounting judgment. Wood v. Commissioner, supra, relied upon by the taxpayers, is not controlling upon the issue we are considering. In the Wood case, the Commissioner's evidence as to the cost of land sold, for use as a basis for determining capital gain, was found by the court to be indefinite and unconvincing. The taxpayer had not reported the capital gain, and hence he did not in his return set out his cost basis.

In our present case the issue of the basis to be used for determination of capital gain is not involved. Additionally in our present case the Commissioner

is accepting the cost of goods sold figures as reported by the taxpayers. It should be pointed out that the taxpayers included in their original returns the cost of all goods sold, including the cost of goods sold on credit. The taxpayers do not contend that any expenses were incurred in connection with the credit sales that are not included in their tax returns. Taxpayers' contention that the Commissioner compared omitted gross receipts with reported gross income is without merit. All costs pertaining to the credit sales were included in the original reports. The gross income was, under the circumstances of this case, increased by the amount of the gross receipts from the credit sales.

The amounts of the credit sales were substantial. All pertinent figures are detailed in the Tax Court's opinion. The Tax Court's finding as to gross income reported, omitted sales, and percentage of omitted sales to gross income is:

| 1947 | Gross Income | Omitted Sales | Percentage |
|---|---|---|---|
| John Iverson | $ 81,401.65 | $43,994.88 | 54.05% |
| Alvilda Iverson | 45,394.57 | 19,387.02 | 42.71% |
| Mardrid Davison | 36,467.48 | 17,848.18 | 48.94% |
| 1948 | | | |
| John and Alvilda Iverson | 175,184.19 | 52,520.80 | 30.50% |
| Mardrid Davison | 51,281.18 | 13,039.72 | 25.42% |

The purpose of section 275(c) is to reach substantial omissions. The taxpayers received full credit for the deductions to which they were entitled in their original returns, regardless of whether said deductions were claimed as cost of goods sold or as other deductions. The Tax Court in its opinion points out that the omitted sales are in each instance over 100 per cent of the taxpayers' net income. We are not holding that net income is the figure to be used in making computations under 275(c), but make the above observation only for the purpose of showing that the omissions are substantial.

As previously stated, all costs of goods sold are deducted from income in the original returns either above or below line 13. If the costs of goods claimed as other deductions are to be considered as costs of goods sold in determining the excess, it might be appropriate in order to make a fair comparison to make the same adjustments in the original returns. If such procedure were followed, the excess would exceed 25 per cent.

The problem presented by these cases is a difficult one. We are inclined to believe that under the peculiar facts and circumstances disclosed by the record before us the Commissioner was justified in accepting as correct the cost of goods and other deductions as reported by the taxpayers in their original returns, which for tax purposes gave taxpayers all deductions to which they were entitled. The Commissioner has in no way challenged the correctness of the cost of goods or other deductions as reported by the taxpayers. The Commissioner has proved omitted gross receipts exceeding 25 per cent of the reported gross income. All costs of goods sold, including cost of merchandise sold on credit, were claimed as credits in the original returns. Accordingly, the Tax Court was justified in determining that gross income was increased by the amount of the established credit sales, and in concluding that the omitted gross income exceeded reported gross income by 25 per cent and that the five year statute of limitations applies.

Affirmed.