*Decisions will be entered under Rule 50.*

EZO PRODUCTS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85436. Filed November 30, 1961.

*Alvin J. Ivers, Esq.*, for the petitioner.
*Albert Squire, Esq.*, for the respondent.

Scott, *Judge:* Respondent determined deficiencies in petitioner's income tax for the years 1956 and 1957 in the amounts of $27,980.77 and $3,528.73, respectively.

The issues for decision are:

(1) Whether respondent correctly determined that petitioner's income for the years 1956 and 1957 should be reported on an accrual basis of accounting in lieu of the cash receipts and disbursements basis upon which petitioner kept its books and filed its returns.

(2) If an accrual basis is the proper method of accounting, whether respondent was correct in not deducting inventory as of January 1, 1956, acquired in a nontaxable exchange, and in adding the amounts of accounts receivable similarly received by petitioner in computing petitioner's income for the years 1956 and 1957.

(3) Whether petitioner is the same taxpayer as the partnership, the assets of which were transferred to petitioner in a nontaxable exchange as of January 1, 1956, within the meaning of section 481 of the Internal Revenue Code of 1954, thereby making the provisions of that section applicable in the computation of petitioner's income.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

Petitioner is a corporation organized on or about January 1, 1956, under the laws of Pennsylvania. It filed its income tax returns for the calendar years 1956 and 1957 with the district director of internal revenue at Philadelphia, Pennsylvania.

The business of petitioner was originated by a partnership composed of two brothers, Julius Hollander and Harry Hollander. From 1944 to December 31, 1955, the business was operated as a partnership under the name of Ezo Products Company, hereinafter referred to as the partnership. Julius and Harry each had a 50 percent interest in the capital and the profits and losses of the partnership. On or about January 1, 1956, Julius and Harry transferred the assets and liabilities of the partnership to petitioner in exchange for its capital stock. The transaction constituted a tax-free transfer under the provisions of section 351 of the Internal Revenue Code of 1954.

Petitioner is engaged, as was the partnership, in the manufacture of dental cushions, consisting of cloth pads impregnated with paraffin for use by wearers of false teeth whose gums have receded. The raw materials used in the manufacture of the cushions are primarily cloth and paraffin. The cushions are cut and molded by machine and then

counted, packaged, and placed in shipping cartons. In 1956 and 1957 petitioner maintained a stock of finished goods from which it filled its sales orders. It also maintained stocks of raw materials including cloth, cushions, cartons, and other items.

From about 1950 throughout the year 1955 the sales of products by the partnership were primarily to retail drugstores throughout the United States and to some extent in Canada. For the years 1956 and 1957 petitioner's sales were similarly primarily to retail drugstores in the same areas as the sales made by the partnership. The method of operation of the business and the manufacture of the cushions by the partnership was the same as the method employed by petitioner.

In keeping its books and reporting its income on its Federal income tax returns, petitioner used the cash receipts and disbursements method of accounting. It did not take inventories into account. It reported taxable income of $17,049.57 for the year 1956 and $11,535.04 for the year 1957.

From the time of its organization throughout the year 1955 the partnership used the cash receipts and disbursements method of accounting in keeping its books and filing its partnership Federal returns of income and did not take inventories into account in filing its returns. The partnership did not maintain any record of inventories.

In the early part of 1956, petitioner began to keep records of its inventories for insurance purposes. Thereafter, each month it would count and record each item of raw materials and finished goods on hand, price each item, extend, and total the extensions. This information was kept on inventory sheets which were not part of the books of account of petitioner. Petitioner's inventory as of December 31, 1956, amounted to $39,650, and as of December 31, 1957, amounted to $54,795. Its inventories, as of December 31, 1958, 1959, and 1960, were $42,206, $29,572, and $28,018, respectively.

Petitioner's inventory sheets include items in the nature of supplies and materials in addition to goods for manufacture and sale. The terms of sale stated by petitioner on its invoices were 2-percent discount if payment was made within 10 days. Most of petitioner's customers paid the invoices rendered to them after 10 days but within 30 days. However, in some instances a customer would take the 2-percent discount when payment was not made until 40 days after the invoice date, and petitioner would accept such payment.

From about 1950 throughout 1955 the partnership used the same terms of sale and method of billing as used by petitioner.

Petitioner did not keep an account on its books for accounts receivable. Its actual accounts receivable as of December 31, 1956, were $19,306, and as of December 31, 1957, $18,850.

The partnership had the following accounts receivable as of the dates indicated:

| Date, Dec. 31— | Accounts receivable |
|---|---|
| 1951 | $5,325 |
| 1953 | 17,889 |
| 1954 | 9,693 |
| 1955 | 13,824 |

Petitioner had accounts receivable as of December 31, 1958, 1959, and 1960 in the amounts of $18,374, $21,739, and $23,813, respectively.

It was petitioner's practice to pay for materials it purchased upon receipt of the invoice therefor. It kept no account on its books for accounts payable. On December 31, 1956, it had actual accounts payable and accrued expenses of $1,783, and on December 31, 1957, it had actual accounts payable and accrued expenses of $4,710.

The partnership reported, on its returns of income, sales of products and purchases of materials in the following amounts for the years indicated:

| Year | Sales | Purchases |
|---|---|---|
| 1952 | $194,755 | $16,570 |
| 1953 | 263,398 | 23,051 |
| 1954 | 286,628 | 35,056 |
| 1955 | 335,944 | 51,580 |

Petitioner reported, on its income tax returns filed on the cash receipts and disbursements basis, sales of products and purchases of materials in the following amounts for the years indicated:

| Year | Sales | Purchases |
|---|---|---|
| 1956 | $388,407 | $60,904 |
| 1957 | 438,780 | 71,365 |
| 1958 | 468,953 | 66,977 |
| 1959 | 520,573 | 69,668 |

For the years 1954 and 1955 the partnership, on its returns of income, showed ordinary income without deduction for salaries of the partners, of $41,085 and $57,230, respectively.

Petitioner, on its income tax returns filed on the cash receipts and disbursements basis, showed taxable income for the years 1958, 1959, and 1960 in the amounts of $20,848.45, a loss of $233.42, and $12,659, respectively.

As of the close of business on December 31, 1955, the partnership had no actual unpaid liabilities or accrued expenses. All of the merchandise purchased by the partnership had been paid for prior to January 1, 1956. All of the inventory of the partnership on hand as of December 31, 1955, had been paid for and the amount so paid was included in the cost of goods sold in computing the income for 1955 shown on the partnership's return of income.

The income tax returns filed by Julius Hollander and Harry Hollander and their respective wives for the years 1952 and 1953 were the subject of a field examination by an internal revenue agent. During the course of this examination the income of the partnership was investigated. The revenue agent looked into the books of account of the partnership, asked for a number of documents, and substantiated invoices during the course of his investigation. After the investigation was completed, a report thereof was furnished to each of the partners, and certain minor adjustments were proposed relating to deduction of personal life insurance premiums and automobile expenses. Each of the partners accepted these adjustments and paid a deficiency in his income tax on the basis thereof for each of the years 1952 and 1953. The report did not make any change in the cash receipts and disbursements method of accounting used by the partnership.

Julius Hollander discussed with the internal revenue agent investigating petitioner's income tax liability for 1956 and 1957 the fact that the partnership books had been kept and the returns of income filed on the cash receipts and disbursements basis from the time of the formation of the partnership and that no internal revenue agent had previously suggested that such method was not a proper method for keeping the books and filing the returns.

The revenue agent began his examination of petitioner's 1956 income tax return in December of 1957, and the examination of the returns for 1956 and 1957 was concluded in January 1959.

Under date of March 28, 1958, a letter was addressed to the representatives of Julius and Harry Hollander in regard to the Federal income tax returns of Harry and Eve Hollander and Julius and Lillian Hollander for the taxable year 1954 in which it was stated, "This is in reference to your Federal Income Tax return for the taxable year indicated above, which is under consideration by this office." The letter proceeded to request that a consent form extending the statutory period of limitation upon assessment of tax be executed. This letter was signed by the Chief of the Audit Division of the office of the District Director of the Internal Revenue Service. A similar letter requesting a further extension was sent under date of August 15, 1958. Julius Hollander and Lillian Hollander and Harry Hollander and Eve Hollander each signed the forms consenting to an extension of the time for assessment of income taxes for the year 1954, the final extension being to December 31, 1958. Each of these consent forms was accepted on behalf of the district director of internal revenue.

The partnership has not filed an amended return of income for the year 1954, and neither Julius nor Harry Hollander has filed an amended income tax return for that year.

Respondent in his deficiency notice adjusted petitioner's income for the year 1956 by adding thereto its inventories and accounts receivable as of December 31, 1956, and subtracting therefrom accounts payable as of the same date and adjusted its 1957 income by adding thereto inventory and accounts receivable as of December 31, 1957, and accounts payable as of January 1, 1957, and subtracting therefrom inventory and accounts receivable as of January 1, 1957, and accounts payable as of December 31, 1957, giving the following explanation for these adjustments:

> It is held that the taxpayer's income must be determined on the accrual basis of accounting in lieu of the cash receipts and disbursements basis used in its returns for the taxable years 1956 and 1957, and that inventories and accounts receivable acquired in a non-taxable exchange as of January 1, 1956, have a basis of zero, which was their basis in the hands of the transferor.

OPINION.

Section 446(a) of the Internal Revenue Code of 1954 [1] provides that taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. Section 446(b) [2] provides that if no method of accounting has been regularly used by the taxpayer or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as in the opinion of the Commissioner does clearly reflect its income.

It is petitioner's position that it properly reported its taxable income on the cash receipts and disbursements method of accounting upon which it has regularly kept its books. Petitioner contends that such method clearly reflects its income.

Respondent contends that under the provisions of his regulations requiring the use of inventories in computing income in all cases in which purchase or sale of merchandise is an income-producing factor and his regulations requiring that purchases and sales be used where it is necessary to use an inventory,[3] the accrual method is the proper method for petitioner to use in reporting its income.

---

[1] Sec. 446(a). GENERAL RULE.—Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

[2] Sec. 446(b). EXCEPTIONS.—If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as in the opinion of the Secretary or his delegate, does clearly reflect income.

[3] Sec. 1.446–1(a)(4)(i), Income Tax Regs.:

In all cases in which the production, purchase, or sale of merchandise of any kind is an income-producing factor, merchandise on hand (including finished goods, work in process, raw materials and supplies) at the beginning and end of the year shall be taken into account in computing the taxable income of the year. * * *

Sec. 1.446–1(c)(2)(ii), Income Tax Regs.:

In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph.

Petitioner contends that the Income Tax Regulations under section 446 of the Internal Revenue Code of 1954 constitute a change from prior regulations in that the prior regulations did not contain the provision that the Commissioner may authorize a taxpayer to adopt or continue to use a method of accounting consistently used by the taxpayer although not specifically described in the Income Tax Regulations if in the opinion of the Commissioner income is clearly reflected by the use of such method.[4] Petitioner argues that respondent has, in effect, approved the use by petitioner of the cash receipts and disbursements method since returns filed by the partnership on this basis have been investigated by respondent and no change made from that method of reporting, and since respondent did not change the method used by the partnership for the years 1954 and 1955 even though the statute on the assessment of deficiencies against the partners for those years had not expired when petitioner's returns for 1956 and 1957 were under investigation.

Respondent points out that the partners and the petitioner in this case are separate entities and different taxpayers but argues that even were they the same taxpayer, his prior action is not equivalent to authorizing the use of the cash receipts and disbursements method of accounting.

Where respondent has accepted over a long period of years or approved a method of accounting by a taxpayer, this fact will be given weight in determining whether respondent was justified in changing the method used by such taxpayer. *Geometric Stamping Co.*, 26 T.C. 301 (1956). Respondent's authority to order a change in accounting method when the taxpayer has regularly employed a consistent method depends upon the validity of his finding that the taxpayer's method does not clearly reflect income. *Glenn* v. *Kentucky Color & Chemical Co.*, 186 F. 2d 975 (C.A. 6, 1951). However, respondent is not estopped from computing a taxpayer's income on an accrual method of accounting because of the fact that he has examined prior returns without objection to the method used by the taxpayer. *Caldwell* v. *Commissioner*, 202 F. 2d 112 (C.A. 2, 1953), affirming a Memorandum Opinion of this Court. The regulations

---

[4] Sec. 1.446–1 (c) (2) (ii)₀ Income Tax Regs.:

No method of accounting will be regarded as clearly reflecting income unless all items of gross profit and deductions are treated with consistency from year to year. The Commissioner may authorize a taxpayer to adopt or change to a method of accounting permitted by this chapter although the method is not specifically described in the regulations in this part if, in the opinion of the Commissioner, income is clearly reflected by the use of such method. Further, the Commissioner may authorize a taxpayer to continue the use of a method of accounting consistently used by the taxpayer, even though not specifically authorized by the regulations in this part, if, in the opinion of the Commissioner, income is clearly reflected by the use of such method. See section 446(a) and paragraph (a) of this section, which require that taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books, and section 446(e) and paragraph (e) of this section, which require the prior approval of the Commissioner in the case of changes in accounting method.

cited by petitioner as being a change in the regulations under the Internal Revenue Code of 1954 from those applicable to years governed by the Internal Revenue Code of 1939, is merely a recognition in the regulations that methods of accounting not specifically mentioned in the regulations may be authorized when such method has been consistently followed by the taxpayer. It does not constitute a change from the recognized principles applied under the Internal Revenue Code of 1939.

The provision of the regulations requiring the use of inventories in cases in which production, purchases, or sale of merchandise of any kind is an income-producing factor, has appeared in respondent's regulations over a period of many years, and has on numerous occasions received approval of the courts. *Boynton* v. *Pedrick*, 136 F. Supp. 888 (S.D.N.Y. 1954), affirmed per curiam 228 F. 2d 745 (C.A. 2, 1955). Cf. *Iverson's Estate* v. *Commissioner*, 255 F. 2d 1 (C.A. 8, 1958), affirming 27 T.C. 786 (1957), certiorari denied 358 U.S. 893. Respondent's regulation requiring purchases and sales to be reported on an accrual basis where it is necessary to use an inventory is likewise one of long standing which has received approval of the courts. *Iverson's Estate* v. *Commissioner*, *supra*, and cases there cited at page 4. Cf. *David W. Hughes*, 22 T.C. 1, 4 (1954).

In a number of cases we have recognized as petitioner argues that where inventories are so small as to be of no consequence or consist primarily of labor, the presence of inventories is not necessarily sufficient to require a change in petitioner's method of accounting. *Michael Drazen*, 34 T.C. 1070, 1079 (1960), appeal dismissed (C.A. 8, 1961), and cases there cited. Cf. *Brookshire* v. *Commissioner*, 273 F. 2d 638 (C.A. 4, 1960), affirming 31 T.C. 1157 (1959). This, however, is not the factual situation in the instant case. Here, petitioner was in the manufacturing business, it maintained inventories of finished goods as well as supplies, and its inventories varied relative to its total income in substantial amounts from year to year. The difference between petitioner's opening and closing inventories for 1957 was $15,145, which amount was in excess of its income for that year reported on the cash receipts and disbursements method. This increase in inventory, in effect, represents income earned in 1957 and reinvested in inventory. The fluctuation in petitioner's accounts receivable, although not as great as the fluctuation in its inventories, was substantial in relation to its income. We agree with respondent that petitioner's business is of such a nature that a cash receipts and disbursements method of accounting does not clearly reflect income and that petitioner's income must be determined on an accrual method of accounting.

Petitioner argues that respondent is in error in his method of computing petitioner's income for the year 1956. Under the provisions

of the Internal Revenue Code of 1939 it has been held that inventories and accounts receivable received by a corporation in a reorganization from an individual or partnership which had reported its income on the cash receipts and disbursements basis have a zero basis to the new corporation. *P. A. Birren & Son* v. *Commissioner*, 116 F. 2d 718 (C.A. 7, 1940), affirming a Memorandum Opinion of this Court. *Frank G. Wikstrom & Sons, Inc.*, 20 T.C. 359 (1953). Cf. *Caldwell* v. *Commissioner, supra*, wherein the court distinguishes *P. A. Birren & Son* v. *Commissioner, supra*. Petitioner contends that these cases are inapplicable since section 481 of the Internal Revenue Code of 1954 requires in the instant case a recomputation of income as therein provided.

Section 481(a)(1) of the Internal Revenue Code of 1954 [5] provides that where in computing a taxpayer's taxable income the computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding calendar year was computed, there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent an amount from being duplicated or omitted.

It is petitioner's contention that since it is in reality a continuation of the preceding partnership, there has been a change in the method of accounting from that used by the taxpayer in its preceding taxable year and, therefore, the provisions of section 481 of the Internal Revenue Code of 1954 are applicable.

It is respondent's position that the petitioner herein is a corporation separate and distinct from the partnership composed of Julius and Harry Hollander, that the corporation's first taxable year was 1956, and that the corporation had no preceding taxable year to the year of change.

Where a corporation is formed for a business purpose, it is a separate entity and separate taxpayer from the stockholders who are responsible for its creation. *Moline Properties* v. *Commissioner*, 319 U.S. 436 (1943); *Textile Apron Co.*, 21 T.C. 147 (1953); *Frank G. Wikstrom & Sons, Inc., supra*. Cf. *New Colonial Co.* v. *Commissioner*, 292 U.S. 435 (1949). There is no evidence here that petitioner's incorporation was without substance or business purpose and petitioner makes no such contention. Petitioner relies upon *Stanton Brewery* v. *Commissioner*, 176 F. 2d 573 (C.A. 2, 1949), and *Commissioner* v. *Sansome*, 60 F. 2d 931 (C.A. 2, 1932). Both of these cases are distinguishable from the present case. In *Stanton Brewery* v. *Commissioner, supra*, the Court of Appeals held that in a statutory merger,

---

[5] Sec. 481(a). GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then * * *

the merged corporations continue in the resulting corporation and are thus the same taxpayer. The court distinguishes certain other situations involving tax-free reorganizations from mergers. *Commissioner v. Sansome, supra,* involved distributions upon dissolution of amounts received by a corporation in a nontaxable reorganization representing the accumulated earnings of the old corporation. The Court of Appeals in that case held that under the statute there involved, such distributions were intended to be taxed to the recipient as ordinary dividends. No question of whether the new corporation was the same taxpayer as the old was involved.

The partners here elected for purposes which presumably to them seemed sufficient to form a corporation as of January 1, 1956. This corporation is a separate entity and separate taxpayer from the partners.

We hold that petitioner had no preceding taxable year, and, therefore, section 481 of the Internal Revenue Code of 1954 is inapplicable here.

Petitioner offered evidence in an effort to reconstruct inventories for the years 1952 through 1955, it having no actual record of such inventories. In view of our holding with respect to section 481 of the Internal Revenue Code of 1954, it is unnecessary to pass upon the question of the accuracy of the reconstructed inventories.

*Decision will be entered for the respondent.*