RECORD WIDE DISTRIBUTORS, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Record Wide Distributors, Inc. v. Commissioner
Docket No. 11595-78.
United States Tax Court
T.C. Memo 1981-12; 1981 Tax Ct. Memo LEXIS 732; 41 T.C.M. (CCH) 704; T.C.M. (RIA) 81012; January 12, 1981; As Amended February 11, 1981 Claude Hanks and Leonard R. Yocum, for the petitioner. David T. Karzon, Jr., for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined deficiencies in petitioner's Federal income tax for its taxable years 1972, 1973, and 1974, in the amounts of $ 92,056.99, $ 34,444.54, and $ 21,232.29, respectively. The issues presented for our decision are (1) whether petitioner should have reported its income on *734 an accrual rather than the cash method of accounting, (2) whether respondent properly calculated petitioner's increase in accounts receivable for the years in issue and (3) whether petitioner is entitled to a bad debt deduction for its taxable year 1974. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioner, Record Wide Distributors, Inc., is a Missouri Corporation with its principal place of business in Fenton, Missoui. It timely filed its U.S. Corporation Income Tax Returns, Form 1120, for the calendar years 1972, 1973, and 1974 with the Internal Revenue Service Center at Kansas City, Missouri. Petitioner was incorporated on March 7, 1972, prior to which the business was operated as a sole proprietorship known as Bootheel Records by Gayron Lytle. During the years in issue Gayron Lytle owned 100% of the stock of petitioner and was its president. His brother, Randall, was vice president and petitioner's managing officer during those years. Petitioner is a wholesaler in the business of selling phonograph records, 8-track tapes, and cassette tapes to wholesalers and retailers. The bulk of the merchandise sold by it are cut outs. Cut outs *735 are budget products which the manufacturer has not been able to sell in its market. The petitioner assembles cut outs into lots of varying size and then ships them to retailers for sale at highly discounted prices. The nature of cut outs, being less marketable, makes it virtually impossible for a retailer to determine to what extent a given lot of records or tapes will be sold. For this reason petitioner guaranteed its customers that they could return any unsold items for full credit. There are no written contracts between petitioner and its customers, but petitioner has been profitable notwithstanding. Petitioner's policy has been not to require any payment for records and tapes until the retailer had sold all of the product that it could and returned the unsold merchandise. Although petitioner has a policy whereby it encourages returns and payments within 120 days of shipment, it often does not receive payments and returns for well over 120 days, sometimes even over a year. At the time petitioner shipped goods to a customer an invoice was sent along showing the amount, description, and price of the items sold. Petitioner has historically experienced returns of between 50 *736 and 60 percent. Of the goods shipped by petitioner in any taxable year 30-35 percent of the returns with respect thereto were received by petitioner in a later taxable year (usually within the first 4 months). One of petitioner's major customers was Sound On Tape Distributors, Inc., a wholesaler of 8-track tapes (hereinafter Sound On). Petitioner maintained the same return policy with Sound On that it did with its other customers. Until 1974 Sound On dealt heavily in what are known as bootleg, duplicate, or counterfeit tapes. In February 1974 Sound On was enjoined from selling such tapes. As a result, Sound On's inventory was nearly worthless and it returned the tapes to petitioner. After crediting Sound On for these returns Sound On owed petitioner $ 176,574.22. Although Sound On's financial position was unstable its management attempted to salvage the business. Petitioner no longer extended Sound On credit after 1974 but required payments (including return credit) at least equal to the amount of merchandise shipped prior to or at the time of shipment. Several of Sound On's checks bounced. Thus, starting in 1976, petitioner required cash only upon delivery. In 1978 petitioner *737 and Sound On executed an agreement settling the latter's outstanding debt which had been reduced to the principal amount of $ 161,000 owed to petitioner, for $ 5,000. Sound On ceased doing business shortly after the execution of this agreement. On its books petitioner wrote off the uncollected Sound On debt in 1978, however, it has never been written off for Federal income tax purposes. During the years in issue, and before, petitioner operated on a hybrid method of accounting. It maintained an inventory on its books for determining its cost of sales [1] but determined its sales on the cash basis. That is, petitioner posted sales only as it received cash. Furthermore, petitioner did not include goods received from the manufacturer but not paid for on its Schedule A as "Merchandise bought for Manufacturer or Sale." Respondent has determined that petitioner's method of reporting income from sales, i.e., the cash receipts and disbursements method, does not clearly reflect income *738 and that an accrual method of accounting does clearly reflect income. Consequently, respondent increased petitioner's income for taxable years 1972, 1973, and 1974 by $ 191,775.41, $ 71,759.47, and $ 44,233.93, respectively. [2]
OPINION Petitioner's primary contention is that its hybrid method of accounting and reporting income during the years in issue was consistent with its unique method of doing business since prior to the time of its incorporation. Furthermore, it argues that its methods clearly reflect income and are in conformity with generally accepted accounting principles. Respondent maintains that since petitioner must keep inventories for each taxable year in issue [3] it must report purchases and sales using an accrual method of accounting. [4]
*739 Section 446(a)[5] provides the general rule that taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. Section 446(b) provides two exceptions to this general rule. Where no method of accounting has been regularly used by the taxpayer, or where the method used by the taxpayer does not clearly reflect income, the computation of taxable income shall be made under such method as in the opinion of the Commissioner does clearly reflect income. Sec. 446(b). The respondent's determination pursuant to his authority under Section 446(b) is presumptively correct and must be upheld unless the petitioner has proved it clearly erroneous or arbitrary. Brooks-Massey Dodge, Inc. v. Commissioner,60 T.C. 884, 891 (1973). The respondent's discretion in matters of accounting methods is very broad. See Commissioner v. Hansen,360 U.S. 446 (1959). *740 Where one's method of accounting does not, in the opinion of the Commissioner, clearly reflect income the respondent may require the use of such method as does clearly reflect income. Sec. 446(b). This is true regardless whether the petitioner has consistently used some other method. See Iverson's Estate v. Commissioner,255 F. 2d 1, 5 (8th Cir. 1958). To allow otherwise would lead to the untenable conclusion that a taxpayer has unfettered discretion to select any method of accounting for tax purposes so long as it conforms to that used for bookkeeping purposes. Petitioner has entered no evidence that its hybrid method of accounting is in accord with generally accepted accounting methods. [6] Assuming, arguendo, that petitioner's method is proper for purposes of financial accounting this fact is not determinative for tax accounting purposes. See Thor Power Tool Company v. Commissioner,439 U.S. 522 (1979). It is incumbent upon petitioner to prove respondent's determination arbitrary or clearly erroneous. *741 See Thor Power Tool Company v. Commissioner, supra.This, petitioner has not proved. In his deficiency notice respondent determined that petitioner's computation of its income on the cash receipts and disbursements method does not clearly reflect income. Petitioner does not dispute that it must maintain inventories since the sale of merchandise is a principal income-producing factor of its business. See Secs. 1.446-1(a)(4)(i); 1.471-1, Income Tax Regs. Where inventories are required the regulations mandate the use of an accrual *742 method of accounting for purchases and sales. Sec. 1.446-1(c)(2)(1), Income Tax Regs. This principle has been consistently upheld by the courts. See, e.g., Niles Bement Pond Company v. United States,281 U.S. 357 (1930); Wilkinson-Beane, Inc. v. Commissioner,420 F. 2d 352 (1st Cir. 1970); Iverson's Estate v. Commissioner,255 F. 2d 1 (8th Cir. 1958); Caldwell v. Commissioner,202 F. 2d 112 (2d Cir. 1953); Ezo Products Company v. Commissioner,37 T.C. 385 (1961). In light of these cases we can in no way find that respondent's determination is either arbitrary or clearly erroneous. Therefore, respondent's determination that petitioner must report its income on the accrual method must prevail. Alternatively, petitioner maintains that if it is required to report income on an accrual method of accounting it should nonetheless not report income until cash is received because, in light of its return policy, all events had not occurred which establish its right to receive any certain amount of income. We do not dispute that income is to be included only when all the events *743 have occurred which fix the petitioner's right to receive such income and the amount thereof is determinable with reasonable accuracy. Spring City Foundry Company v. Commissioner,292 U.S. 182 (1934); Sec. 1.446-1(c)(1)(ii), Income Tax Regs. However, it is clear that petitioner was dealing with its customers on a "sale or return" basis rather than on a consignment basis. [7] The fact that a buyer may return any part of the goods shipped but unsold does not render the transaction a consignment. See Mo. Ann. Stat. Sec. 400.2-327(a). Under a sale or return system the petitioner is required to report the income from the sale upon delivery of the goods to its customers. The right to receive payment, not the actual receipt, determines whether income has accrued and must be included in the gross income of an accrual basis taxpayer. Commissioner v. Hansen,360 U.S. 446 (1959); Spring City Foundry Company v. Commissioner,292 U.S. 182 (1934). Petitioner's right to receive payment is unaffected by predicted uncollectability, *744 no matter how certain. See Spring City Foundry Company v. Commissioner, supra.As stated in that case "if such accounts receivable become uncollectible, in whole or part, the question is one of deduction which may be taken according to the applicable statute." Id. at 185. [8]
*745 The final issue for our decision is whether petitioner is entitled to a bad debt deduction for the debt of Sound On in 1974. Petitioner asserts that due to the prohibition against the sale by Sound On of duplicate tapes in 1974 it (Sound On) was ruined financially, rendering its debt owed to petitioner worthless at that time. Petitioner bases this conclusion on the fact that Sound On's only assets were worthless inventory and tape racks and that if Sound On had liquidated in 1974 the bulk of its accounts payable to petitioner could not have been paid. It is respondent's position that the debt owed to petitioner by Sound On did not become worthless until 1978 at which time Sound On ceased doing business and at which time petitioner settled its account with Sound On for $ 5,000. Section 166[9] provides that a corporation may deduct bad debts for the taxable year when, and to the extent, they become wholly or partially worthless. The burden of proving the date of worthlessness is on the petitioner. Mueller v. Commissioner,60 T.C. 36, 41 (1973); Perry v. Commissioner,22 T.C. 968 (1954). *746 In the instant case it is clear that Sound On's debt was not wholly worthless in 1974. Courts are reluctant to consider the debt of a business wholly worthless where it has been able to perpetuate itself as a going concern. Riss v. Commissioner,56 T.C. 388 (1971), aff'd 478 F. 2d 1160 (8th Cir. 1973). Sound On continued in business for almost four years after the time at which petitioner asserts its debt became worthless. We do not suggest that Sound On was in healthy financial condition but we do not consider Sound On's attempts, to keep its business alive and growing unrealistic. The fact that Sound On could not have paid its debt during 1974 is not determinative. L.A. Shipbuilding and Drydock Corp. v. United States,289 F. 2d 222 (9th Cir. 1961). Petitioner continued to do business with Sound On after 1974. Although it would not extend Sound On credit it did accept its checks for approximately 2 years even though several bounced. On the facts presented we cannot find that Sound On's debt to petitioner became worthless in 1974. *747 Alternatively, petitioner on brief asserts that Sound On's debt became partially worthless in 1974. Respondent maintains that "the Commissioner cannot allow a partial bad debt deduction [under Sec. 166(a)(2)] in an amount which exceeds the part charged off by the taxpayer within the taxable year of the claimed worthlessness." [10] In the instant case petitioner charged off the entire debt owed by Sound On in 1978. [11] No part was charged off before that time. The petitioner alleges that had it been on an accrual method of accounting for 1974 it would have charged off the debt at that time. We need not consider whether under circumstances where the respondent changes the petitioner's method of accounting from cash basis to an accrual basis, the petitioner should be allowed to retroactively charge off some part of a debt which became worthless in a prior year and which would have been charged off had the petitioner consistently maintained an accrual method *748 of accounting. [12] This Court has long taken the position that section 166(a)(2) confers broad discretion upon the respondent to determine deductibility of debts alleged to be partially worthless. See Sika Chemical Corp. v. Commissioner,64 T.C. 856, 862-63 (1975) and cases cited therein. [13] Respondent's determination must be upheld unless found to be plainly arbitrary or unreasonable. Id. To overcome the respondent's presumption of correctness, it is the petitioner's burden to establish that in the year for which the partial worthlessness is claimed the amount of such worthlessness could be predicted with reasonable certainty. Id. This the petitioner has failed to do. Thus, we must uphold the respondent's determination that petitioner is not entitled to deduct any portion of the Sound On debt in 1974. *749 Because of certain concessions of the parties regarding accounts payable and the deductibility of bad debits, Decision will be entered under Rule 155.
Footnotes
1. Petitioner's inventory at the end of a taxable year included only those items situate in its warehouse. None of the records and tapes in the hands of its customers were included in its inventory.↩
2. These adjustments are as reflected in respondent's deficiency notice. Since that time respondent has made certain concessions, the effect of which is to reduce these figures.↩
3. See Section 1.471-1, Income Tax Regs.↩ Petitioner does not dispute the necessity of inventories for the correct reflection of income. 4. Respondent asserts, and there is substantial evidence, that petitioner has actually kept its books on an accrual method of accounting. However, for purposes of this opinion we will proceed on the basis that petitioner's books and records were maintained on a hybrid system.↩
5. All statutory references are to the Internal Revenue Code, as amended and in effect for the taxable years in issue.↩
6. Petitioner kept an accounts receivable ledger with a separate entry for each customer wherein appeared the hearings "Total Accounts Receivable Balance", "Current Amount Due", "30-60 Days", "60-90 Days", and "Over 90 Days". This was set up at the time of petitioner's incorporation by Price Waterhouse, a respected international accounting firm. The use by Price Waterhouse of accounts receivable records indicates that an accrual, not the cash method of accounting, may well be the generally accepted accounting method for petitioner's business.↩
7. Had petitioner been operating on a consignment basis it would have reported income when the retailer sold the goods, not when petitioner was paid. Furthermore, petitioner has not shown that it retained title to the goods while in the retailer's hands. Randall Lytle noted only that risk of loss issues were only discussed with retailers after a loss by fire or otherwise occurred. The parties would work out the burden of loss at that time. Also, if petitioner had been on the consignment basis with its customers it would have had to include all consigned goods in its ending inventory. Sec. 1.471-1, Income Tax Regs. This petitioner did not do. Duesenberg, Inc. v. Commissioner,84 F. 2d 921 (7th Cir. 1936). See generally J.J. Little and Ives Co., Inc. v. Commissioner,T.C. Memo. 1966-68. Finally, under Missouri law (the Uniform Commercial Code) petitioner unquestionably operated under a "sale or return", as opposed to a consignment, basis. Mo. Ann. Stat. Secs. 400.2-326↩; 400.2-327. 8. Under Sec. 458(a) (effective only for taxable years beginning after September 30, 1979) an accrual-basis distributor of records may elect to exclude from gross income the income attributable to merchandise returned within four and one half months after the close of the taxable year in which the sales were made. Although not effective for the taxable years in issue, the legislative history indicates that under pre-section 458 law petitioner is required to include the income from the sale of records in gross income when they are shipped to retailers, irrespective of the number of returns. H.R. Conf. Rep. No. 95-1800, 95th Cong., 2d Sess. 279, 1978-3 (Vol. 1) C.B. 521 (1978). Although we sympathize with the petitioner's plight -- that the effect of pre-section 458 law will result in a "bunching" of income in its taxable year 1972 -- we note that petitioner will enjoy an offsetting decrease in income for its taxable year 1980 due to section 458. For years after 1980 the effect of section 458 will be to more accurately reflect petitioner's income than at any time in the past.↩
9. SEC. 166. BAD DEBTS. (a) General Rule.-- (1) Wholly worthless debts.--There shall be allowed as a deduction any debt which becomes worthless within the taxable year. (2) Partially worthless debts.--When satisfied that a debt is recoverable only in part, the Secretary or his delegate may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.↩
10. Benderr, Commissioner,T.C. Memo. 1967-26↩. 11. It should be, noted that although petitioner charged the debt off its books in 1978 it did not take an income tax deduction for it in 1978.↩
12. Cf. section 481(a). We note that Bradstreet Co. v. Commissioner,65 F.2d 943, 945 (1st Cir. 1933), lends some support to petitioner's assertion that the respondent as well as the petitioner bears a burden to select a method of accounting which clearly reflects income. See also Gordon v. Commissioner,63 T.C. 51, 73 (1974); Harbin v. Commissioner,40 T.C. 373, 376-77↩ (1963). 13. See also Production Steel Inc. v. Commissioner,T.C. Memo. 1979-361↩.