*Decision will be entered under Rule 50.*

ESTATE OF JOHN A. BIEWER, DECEASED, HAZEL M. BIEWER, ADMINISTRATRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 89783.    Filed November 14, 1963.

*Kenneth J. Stommel*, for the petitioner.
*Charles R. Abbott*, for the respondent.

OPINION

MULRONEY, *Judge:* The respondent determined a deficiency in income tax of the estate of John A. Biewer, for the taxable period June 26, 1956, through December 31, 1956, in the amount of $31,512.27.

The deficiency results from respondent's changing petitioner's accounting method from the cash receipts and disbursement method to the accrual method and requiring petitioner to include in income, sums collected during the period in issue originating from sales made by decedent in years prior to his death.

Petitioner claims an overpayment for the taxable period June 26, 1956, through December 31, 1956, in an amount not less than $22,563.84.

All of the facts have been stipulated and are found accordingly.

John A. Biewer died on June 26, 1956, and his widow, Hazel M. Biewer, was appointed administratrix of his estate. This estate, which will be called petitioner, continued to conduct decedent's mercantile business and it had its office at 812 South Riverside Street, St. Clair, Mich., during the period here involved. The first Federal fiduciary income tax return of petitioner for the period June 26, 1956, to December 31, 1956, was filed with the district director of internal revenue, Detroit, Mich. This return was prepared and filed on the cash basis of accounting. It is admitted the cash method of accounting used by petitioner in its first Federal income tax return was incorrect and did not clearly reflect income and that the accrual method of accounting was the proper method to be used in its first Federal income tax return to properly reflect income.

There is in the stipulation a lengthy recitation of the actions and reports of the revenue agents who, beginning after July 11, 1957, made examinations of the income tax returns of decedent and his wife for 1954 and the return of John A. Biewer, deceased, and his wife for the period January 1, 1956, to June 26, 1956 (hereinafter sometimes called

decedent's last or 1956 return), and the first return of petitioner (June 26 to December 31, 1956). These stipulated facts show that the revenue agent recommended in his report that the 1954 return be accepted without change; that a change be made in the accounting method for decedent's 1956 return and the report recommended a deficiency of $62,804.24 in the 1956 return of decedent and a deficiency of $30,612.46 in petitioner's first return resulting from a recomputation of the income on the accrual method of accounting. This recomputation of petitioner's first return took into account the fact that the director had initiated a change in the method of accounting in the last return of the decedent and had, therefore, included in taxable income for the last taxable year of decedent the accounts receivable at the date of his death and had allowed as deductions the accounts payable as of the date of his death.

It is stipulated that petitioner executed Form 870, "Waiver of Restrictions on Assessment and Collection of Deficiency * * *" covering the $30,612.46 proposed deficiency in the revenue agent's report and that the deficiency of $30,612.46 plus interest was assessed and petitioner issued its check in payment thereof on July 24, 1959.

On August 19, 1959, John A. Biewer, deceased, and Hazel Biewer submitted a protest in response to the 30-day letter issued on June 19, 1959, with respect to the recommended $62,804.24 deficiency. In this protest taxpayers did not challenge the agent's recommendation of an accounting change but merely contended that the revenue agent erred in his computation of adjustments attributable to pre-1954 years by failing to exclude from the adjustment under section 481, I.R.C. 1954,[1] the net amount of the adjustments which would have been required if the taxpayer had changed his method of accounting in his first taxable year which began after December 31, 1953, and ended after August 16, 1954. Upon receipt and review of this protest, the conference coordinator, district director's office, Detroit, Mich., agreed with taxpayer's contentions and returned the case to the revenue agent's group supervisor for further consideration.

Thereafter, on January 19, 1960, the district director issued a supplemental report disclosing no change in tax liability for the 1956 return of the decedent reversing the previous recommendation for a change in decedent's method of accounting for that year, and a report of reexamination of petitioner's return for the period ended December 31, 1956, and a report for the year 1957, recommending an overassessment in Federal income tax for the period ended December 31, 1956, of $30,612.46, and a deficiency in Federal income tax of $57,397.79 for the year 1957. The overassessment and 1957 deficiency

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

recommendation were based on the contention that petitioner had initiated a change in its method of accounting for the year 1957. This meant that the adjustments made necessary by reason of a change in method of accounting were added to the taxable income in the year 1957 and the deficiency previously agreed to and paid for petitioner's first year ($30,612.46) was scheduled as an overassessment.

On February 19, 1960, petitioner filed a protest to the report of reexamination contending its 1957 return had been filed on the accrual method in accordance with an agreement with the revenue agent's supervisor and that it did not constitute an initiation of a change in method of accounting by the petitioner. Apparently the protest was sustained or at any rate this report and recommendation did not serve as a basis for a determination of any deficiency. The next event appearing in the stipulation is the August 4, 1960, statutory notice, which is the subject of the petition here. As stated earlier, respondent's adjustments in this notice are based on his initiating a change in petitioner's accounting method for its first taxable year and also his inclusion of sums collected during this year originating from sales made by decedent in prior years.

During the period June 26, 1956, to December 31, 1956, petitioner collected $336,331.33 on accounts receivable, the right to which petitioner acquired from and by reason of the death of John A. Biewer. This amount was not properly includable in the taxable income of John A. Biewer for the taxable period in which his death occurred, or a prior period, under the cash basis accounting method on which the income tax returns of John A. Biewer were prepared and filed. Respondent included this amount in petitioner's income under the provisions of section 691(a), which provides, in part, as follows:

SEC. 691. RECIPIENTS OF INCOME IN RESPECT OF DECEDENTS.
  (a) INCLUSION IN GROSS INCOME.—
    (1) GENERAL RULE.—The amount of all items of gross income in respect of a decedent which are not properly includible in * * * the taxable period in which falls the date of his death or a prior period * * * shall be included in the gross income, for the taxable year when received, of:
      (A) the estate of the decedent, if the right to receive the amount is acquired by the decedent's estate from the decedent; * * *

The adjustment resulting from respondent's change in petitioner's method of accounting increased its business income for the period involved by $59,647.55. Respondent also included the $336,331.33 in income under section 691(a). Therefore respondent's adjustments actually increased petitioner's income by approximately $400,000 (some minor adjustments for depreciation and estate tax were made). These two adjustments, as shown by the notice of deficiency, would result in a tax liability after a loss carryback of $62,124.73. From this

sum respondent deducted the $30,612.46 previously paid on July 24, 1959, and determined a deficiency in the amount of the balance or $31,512.27.

Petitioner does not contend error resulted from respondent's addition of $59,647.55 to its income by reason of respondent changing its method of accounting. Petitioner argues the $336,331.33 representing the amounts it actually collected during its first year originating from sales made by decedent in prior years should not have been included in its income because (1) respondent actually changed decedent's method of accounting in his last (1956) year and (2) the income was excluded under section 691(a)(3).

If petitioner is right under its first argument the collections in issue would be thrown into decedent's last taxable period as receivables for sales for prior years subject to section 481 adjustments. The facts do not sustain petitioner's contention that respondent initiated a change in decedent's method of accounting. It is a stipulated fact that the last return of the decedent was closed by execution of Form 870–AD on June 20, 1960, "without adjustment being made to the method of accounting employed in that return." This forecloses all argument that respondent did initiate a change in the method of accounting in the last return of decedent. Since no change in accounting method was, in fact, made in decedent's last return, neither the taxpayer nor respondent "initiated" such a change. The case is to be distinguished from *Irving Falk*, 37 T.C. 1078; *Fred P. Pursell*, 38 T.C. 263, affd. 315 F. 2d 629; and *United States* v. *Lindner*, 307 F. 2d 262, where the change in accounting was, in fact, made and the issue was whether respondent or taxpayer had initiated it.

The reports, recommendations, 30-day letters, and other communications on which petitioner depends, are merely preliminary interlocutory procedures. When these procedural steps stop short of any determination of deficiency and no change in method of accounting is made, they are meaningless—at least on the issue of whether respondent initiated a change in method of accounting. The 30-day letter which transmitted the revenue agent's reports and recommendations to petitioner states "This is not a statutory notice of deficiency" and the letter recites a protest can be made in the event of taxpayer's disagreement with the report and recommendations of the revenue agent and "if requested" a conference will be granted by the Appellate Division. The record here shows a protest was made with respect to the 30-day letter concerning the 1956 return of decedent and the recommendation of the revenue agent was reversed and no statutory notice of deficiency was issued against decedent for that year. Petitioner argues there was no occasion to issue a notice of deficiency because when properly computed, no deficiency would result

from a change in the method of accounting in decedent's last year. If this be true, it is of no significance. An argument that respondent did actually initiate a change in taxpayer's method of accounting in a year which he examined and found no deficiency, can hardly be predicated on the fact that if he had initiated a change, no deficiency would have resulted.

Petitioner argues the action taken by respondent and petitioner in closing the last return of decedent has no application because petitioner wished to settle its estate tax liability and respondent would not agree to settlement of certain issues involving inventory values without the execution of Form 870–AD for the last return of decedent. The reasons for agreeing to the closing this last year without any change in method of accounting are not of interest. It is a stipulated fact that there was no change in the method of accounting made by respondent and, even without the stipulation, the record would not support any finding that respondent ever initiated any change in decedent's method of accounting.

Section 691(a)(3) provides, in part, that:

The right, described in paragraph (1), to receive an amount shall be treated, in the hands of the estate of the decedent * * * as if it had been acquired by the estate * * * in the transaction in which the right to receive the income was originally derived and the amount includible in gross income under paragraph (1) or (2) shall be considered in the hands of the estate * * * to have the character which it would have had in the hands of the decedent if the decedent had lived and received such amount.

Petitioner argues section 481 applies and the collections in issue are subject to the limitations of section 481(b)(4)(A). Section 481 provides, in part, as follows:

SEC. 481. ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING.

(a) GENERAL RULE.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(b) LIMITATION OF TAX WHERE ADJUSTMENTS ARE SUBSTANTIAL.—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(4) SPECIAL RULE FOR PRE-1954 ADJUSTMENTS GENERALLY.—Except as provided in paragraphs (5) and (6)—

(A) AMOUNT OF ADJUSTMENTS TO WHICH PARAGRAPH APPLIES.—The net amount of the adjustments required by subsection (a), to the extent that such amount does not exceed the net amount of adjustments which would have been required if the change in method of accounting had been made in the first taxable year beginning after December 31, 1953, and ending after August 16, 1954, shall be taken into account by the taxpayer in computing taxable income in the manner provided in subparagraph (B), but only if such net amount of such adjustment would increase the taxable income of such taxpayer by more than $3,000.

It is stipulated that as of January 1, 1954, decedent had accounts receivable in the total amount of $134,095.88 and accounts payable in the total amount of $24,179.27.

It is respondent's position that section 481, *supra*, is not applicable here because petitioner, the estate, came into existence on the date of decedent's death, June 26, 1956, and it had no "preceding taxable year" within the provisions of section 481(a)(1) and, therefore, the exclusions of section 481(b)(4)(A) for pre-1954 experience do not apply.

Petitioner argues that when respondent initiated a change in the estate's method of accounting in its first year, the pre-1954 experience of decedent should carry over to the estate. This argument ignores the separate existence of the estate as a taxable entity. In *Herbert's Estate* v. *Commissioner*, 139 F. 2d 756, affirming 1 T.C. 1214, certiorari denied 322 U.S. 752, the court announced the requirement that the estate be recognized as a separate taxable entity in the following language:

It is thus evident that the legislative theory has consistently been to treat the estate as a new and different taxpayer whose life began when the decedent's expired. Whatever status a personal representative may have for other purposes, he is treated by the Revenue Acts as a new owner of the decedent's property for income tax purposes. * * *

Petitioner seems to argue that by the application of section 691 (a)(3) the character of the collections in issue would, in the hands of the estate, be the same as if collected by decedent, and, if collected by decedent, the exclusion of section 481(b)(4)(A) for pre-1954 experience could have been made if respondent initiated a change in his method of accounting. From this petitioner argues it is entitled to the same exclusions of decedent's pre-1954 experience as decedent could have asserted had he been alive when respondent initiated the change in the method of accounting. But the fact is decedent, prior to his death, did not have any *right* to exclude any income pursuant to section 481. True, if his method of accounting had been changed at any time by respondent, he could have excluded pre-1954 experience, but respondent never changed his method. The character of the collections in the hands of the estate is molded by decedent's *rights* at the time of his death. At that time he had no right to demand that

respondent initiate a change in his method of accounting which would give him the pre-1954 exclusions. His only *right* was to make the collections and report them all as income.

The issue here is much like the issue presented in *Ezo Products Co.*, 37 T.C. 385. There a corporation was organized to receive in a tax-free exchange the assets and liabilities of a partnership. The partnership and the corporation employed a cash method of accounting. We held respondent correctly changed the corporation's method of accounting to the accrual method in its first year and the corporation was not a continuation of the preceding partnership and section 481, *supra*, was inapplicable because the corporation "had no preceding taxable year."

The basis for petitioner's pleaded claim of overpayment "in an amount not less than $22,563.84" is not explained in its brief and no specific argument is directed to the issue. We presume it would only exist if respondent's determination were held erroneous. As indicated we have held no error in respondent's determination, so—

*Decision will be entered for the respondent.*

Reviewed by the Court.