**Eldo GROGAN and Mrs. Effie Grogan,
Plaintiffs,**

v.

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 1367.**

United States District Court,
N. D. Georgia,
Gainesville Division.

May 26, 1972.

Telford, Stewart & Stephens, Joe K. Telford and W. Woodrow Stewart, Gainesville, Ga., for plaintiffs.

John M. Stokes, Jr., U. S. Atty., Julian M. Longley, Jr., Asst. U. S. Atty., Atlanta, Ga., John F. Murray, Lawrence R. Jones, Jr., Attys., Tax Division, Department of Justice, Washington, D. C., for defendant.

SIDNEY O. SMITH, Jr., District Judge.

This action for the recovery of income taxes paid to defendant for the taxable year 1963 has been submitted to this Court for judgment on the basis of briefs and stipulated facts.

Plaintiffs are husband and wife who filed a joint tax return for the year 1963. From sometime prior to 1950 until 1962, plaintiff, Eldo Grogan, was a poultry grower. He mixed the feed for his poultry, operated as an individual, and kept his records and computed his income tax according to the cash receipts and disbursement method of accounting. On December 31, 1953, Eldo Grogan's proprietorship had accounts receivable totaling $86,857.56 for poultry sold and accounts receivable totaling $172,545.69 representing feed and chickens furnished contract growers, and a feed inventory of $2,000. On January 2, 1962, Eldo Grogan, in his individual capacity, and his brother, A. J. Grogan, as trustee for the plaintiffs' three minor children, formed a partnership known as Grogan Feed Co. Eldo Grogan contributed the feed mixing operations of his proprietorship to the partnership and his brother, as trustee, contributed $18,000 to the partnership. Consequently, Eldo Grogan owned an interest of 91.6% in the capital and profits of the partnership, which buys feed ingredients from dealers and mills feed for sale and raises some chickens which produce eggs for sale. In 1966, agents of the defendant examined the income tax returns of plaintiffs and the Grogan Feed Co. partnership for the years 1963 and 1964 and changed the partnership's accounting method from the cash to the accrual basis of accounting beginning with the 1963 tax year. Because of this change of method of accounting and determining taxable income all of the outstanding receivables on the books of the partnership for 1963 were taken into the partnership's income. Accordingly, plaintiffs' own taxable income was increased and defendant assessed against plaintiffs additional income taxes for 1963 plus interest and penalty fees. After plaintiffs paid the assessment, they filed claim for refund which was denied.[1]

1) The controversy in this action concerns the operation of section 481(a) of

---

1. Because some of the stipulated facts did not seem material to the resolution of the issues before the court, the entire statement of stipulated facts is not set out in this order.

the Internal Revenue Code (26 U.S.C. § 481). Section 481(a), which is one of the sections governing accounting and computing taxable income, provides that where a taxpayer computes his taxable income by a method of accounting different from the method under which the taxpayer's taxable income for the preceding year was computed, there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted. The section further provides, however, that where a change in accounting method is involuntary, *i. e.,* initiated by the government, no portion of the adjustments which is attributable to pre-1954 Code years shall be taken into account in computing taxable income of the taxpayer in the year of the change in accounting method.[2]

Plaintiffs argue that under section 481, defendant had no right to include in Grogan Feed Co.'s partnership income for 1963 its inventory and deferred receivables as of December 31, 1963, without giving credit for the inventory and deferred receivables of Eldo Grogan's proprietorship as of December, 1953. Defendant contends that the Grogan Feed Co. partnership is, for the purposes of section 481(a), a distinct entity, *i. e.,* a "taxpayer", separate from its individual partners and different from its predecessor sole proprietorship; that, since the partnership did not exist prior to 1962, no portion of the adjustment in dispute can actually be attributed to pre-1954 receivables of the partnership, and, thus, the partnership was due no credit for such items.

In light of the facts and arguments, the Court is presented with this novel question, which both parties agree is not governed by any existing precedent: *Where a person who has operated a business as a sole proprietorship joins with other persons to operate the same business as a partnership and where the former sole proprietor owns an interest of more than 90% in the capital and profits of the partnership, is the partnership a continuation of the sole proprietorship for the purposes of I.R.C. § 481(a) so that pre-1954 inventories and accounts receivable of the proprietorship may be credited against the partnership's inventories and accounts receivable in 1963, the year in which the government changed the partnership's accounting method from cash to accrual?*

While apparently no cases have been decided involving the precise issue before this Court, the Tax Court has decided three somewhat analogous cases.

In Ezo Prods. Co., 37 T.C. 385 (1961), a partnership was succeeded by a corporation; both the partnership and the corporation used the cash receipts and disbursements accounting method. Subsequently, but during the corporation's first taxable year, the government required the corporation to use the accrual method of accounting. The corporation then sought to limit the resulting increase in its taxable income by invoking section 481 to claim credit for the partnership's pre-1954 receivables. The Tax Court held that the corporation was not a continuation of the partnership, but a separate entity, and that as a separate entity it had no preceding taxable years within the meaning of 481(a). The corporation was, therefore, not allowed credit for the partnership's pre-1954 receivables.[3] In Pittsfield Coal & Oil Co., 25 Tax Ct.Mem. 11 (1966), a sole proprietorship was incorporated. In circumstances very similar to those in *Ezo,* the Tax Court held that the corporation should not be considered a continuation of the proprietorship for the purpose of calculating a section 481 adjust-

---

2. For an explanation of the mechanics of computing an adjustment where pre-1954 credit is due, see Treas.Reg. § 1.481–3.

3. For another case which appears to recognize a corporation to be a different entity from its predecessor partnership for the purposes of section 481 adjustments see Dearborn Gage Co., 48 T.C. 190 (1967).

ment following a change in accounting method. The Court again would not disregard the corporation's separate existence and noted the corporation could have had no preceding tax years before its incorporation. Similarly, in Estate of Biewer, 41 T.C. 191 (1963), where the plaintiff was a decedent's estate which continued a business previously conducted by decedent, the court held that for the purposes of section 481 an estate was not a continuation of the decedent taxpayer, but a new and different taxable entity.

Defendant cites these three cases to support its contention that the successor in interest of a business is not the same entity for the purposes of section 481 as its predecessor and cannot receive the benefits of any credits that might arise from the preceding taxable years of its predecessor. Plaintiffs do not directly attack the soundness of these decisions, but point out that corporations and estates are different from partnerships, since partnerships are not treated by the Internal Revenue Code as taxable entities, but rather as mere conduits of income and loss to the partners.

■ Plaintiffs' distinctions have some merit. In light of the estate income tax provisions (26 U.S.C. § 641 et seq.) and express language in both the House and Senate committee reports [H.R.Rep.No.1337, 83d *Cong.*, 2d Sess. (1954); S.Rep.No.1622, 83d Cong., 2d Sess. (1954)] preceding passage of section 641, it seems very plain that a decedent's estate is a distinct taxable entity. *See* 1954 U.S.Code Cong. & Admin. News pp. 4331, 4980. Likewise, the basic corporate income tax provision (26 U.S.C. § 11) indicates a corporation is a separate entity for tax purposes. In contrast, the entity status of a partnership is confused. Certainly, it is true that a partnership is not a taxpaying entity. The basic partnership income tax section (26 U.S.C. § 701) provides that, "A partnership as such shall not be subject to the income tax imposed by this chapter. Persons *carrying on business* as partners shall be liable for income tax

only in their separate or individual capacities." Thus, a partnership, unlike an estate or corporation, is not a taxable entity or "taxpayer" in the sense that it is liable for taxes. On the other hand, it is just as plain that a partnership, like corporations and decedent's estates, is a separate entity or "taxpayer" for income accounting and reporting purposes. *See* 26 U.S.C. § 703; Demirjian v. Commissioner of Internal Revenue, 72–1 U.S.Tax Cas. ¶ 9281 n. 23, 457 F. 2d 1 (3d Cir. 1972) ("Congress intended that a partnership be considered a taxpayer for purposes of computing and reporting income"); H.R.Rep.No.1337, 83d Cong., 2d Sess. (1954) ("partnership is . . . an income reporting entity"); 6 Mertens, Law of Federal Income Taxation § 25.01 (1968) ("The Code recognizes that a partnership is a separate income tax reporting unit which is required to compute its own income distinct from that of the individual partners").

■ Section 481(a) is an income accounting section of the Internal Revenue Code. Therefore, for its purposes a partnership is an entity, a "taxpayer", separate from its partners and not a mere continuation of a preceding proprietorship. This is true even though once the taxable income of the partnership as a separate entity is computed, the partnership is no more than a conduit of income or loss to the partners.

Treating a partnership as a "taxpayer" in the context of 481(a) is consistent with Treas.Reg. § 1.481–2(c) (5) (i) which provides in part that, "In the case of a change in method of accounting by a partnership the adjustments required by section 481 shall be made in respect to the *taxable income of the partnership* but the limitations on tax under section 481(b) shall apply to the individual partners. Each partner shall take into account his distributive share of *the partnership's items, so adjusted.*" (Emphasis added.)

Plaintiffs cite dicta from two Tax Court decisions, E. Morris Cox, 43 T.C.

448 (1965) and Paul H. Travis, 47 T.C. 502 (1965) to support their position that a partnership is not a separate entity for the purposes of section 481(a). In these cases, the Tax Court observed that an appealing argument could be made that Subchapter S corporations (which are taxed somewhat similarly to partnerships) should be treated as continuations of preceding proprietorships or partnerships for the purposes of section 481, but the court expressly refused to pass on the merits of such an argument.

■■ Dicta is inherently unreliable as a guide to what a court will actually decide once faced with an issue squarely. Moreover, of course, even the holdings of the Tax Court are not binding on this court. Furthermore, this court doubts that a Subchapter S corporation should be treated as merely the continuation of its predecessor proprietorship or partnership for the purposes of 481.

■■ The Subchapter S corporate election was intended to permit partnerships and proprietorships to select the corporate form of business organization "without the necessity of taking into account major differences in tax consequences." S.Rep.No.1983, 85th Cong., 2d Sess. 87 (1958), 1958 U.S.Code Cong. & Admin.News p. 4876. The major differences in tax consequences which were the target of the Congress were those arising from the "double tax" ordinarily associated with corporations. Thus, under Subchapter S, a closely held corporation may elect to have the corporation's current taxable income taxed directly to the shareholders, thereby avoiding the problem of "double taxation". Although the corporation is not subject to the corporate income tax, it generally computes

its taxable income as an entity. Furthermore, since Subchapter S is superimposed on the existing law, the electing corporation maintains its corporate identity. Except as expressly altered by Subchapter S, the established principles of corporate taxation apply. Reading through the Subchapter, this court sees nothing to indicate that a Subchapter S corporation succeeding a partnership would be any less a new, separate entity for the purposes of section 481 than a non-Subchapter S corporation would be in a similar case. Further support for the position that a Subchapter S corporation is a distinct entity for the income accounting purposes of section 481 is given by Treas.Reg. § 1.481–2(5) (ii).[4]

■ Having concluded that the Eldo Grogan Co. partnership is not for the purposes of section 481 a mere continuation of its predecessor proprietorship,[5] but a separate entity not entitled to the benefit of its predecessor's pre-1954 taxable years, the only remaining question is the availability of the tax limitations of section 481(b) to plaintiffs.

2) Because the adjustments authorized by section 481(a) tend to bunch income in the year of the accounting change, Congress provided in section 481(b) some methods of spreading the bunched income over years other than the year of the change and, thereby, reducing what may be a staggering tax bill in the year of the change. If plaintiffs qualify for one of these limitations, they would be due some refund.

■ Sections 481(b) (1) and 481(b) (2)[6] represent two alternative methods of limiting tax liability where the adjustments under 481(a) result in

4. For a good recent discussion of Subchapter S's purposes and operation see Rosenkranz, Subchapter S—An Illusory Promise?, 6 Ga.L.Rev. 109 (1971).

5. The apparent inequity occasioned by the timing of the involuntary change in accounting method cannot be used as justification to thwart the Congressional intent. The result is simply a tax hazard and consequence of taxpayer's own deci-

sion to change his form of business. See discussion in Estate of Biewer, *supra*; Dearborn Gage Co., *supra*, 48 T.C. at 199–200.

6. Plaintiffs do not rely on the ten year spread forward provision of 481(b) (4), since the partnership did not initiate the change in accounting methods; nor do they rely on 481(b) (5).

an increase in taxable income exceeding $3,000.[7] The first alternative, 481(b)(1), requires that the method of accounting from which the change is made has been used by the taxpayer (here the partnership) in computing its taxable income for the two taxable years preceding the year of the change in accounting methods. In the case at hand, the partnership did not exist prior to 1962; and, therefore, in 1963 the partnership had not had two preceding taxable years. Accordingly, the 481(b)(1) limitation is unavailable to plaintiffs.

The second alternative, 481(b)(2), would permit plaintiffs to reconstruct their distributive share of the partnership's income under the accrual method for 1962 and 1963. Plaintiffs would then compute the additional tax they would have paid in those years if the partnership had been on the accrual method. If the total tax payable is less when computed this way than the tax payable where all the adjustment was attributable to the year of the change, then the plaintiffs would need to pay only the smaller sum and would be due a refund. Treas.Reg. § 1.481–2(b), (c).

The 481(b)(2) limitation may be available to plaintiffs, if (1) they can satisfy the burden of showing what their tax would have been in 1962 and 1963 had the partnership used the accrual method of accounting and (2) they presented this ground for a refund to the Internal Revenue Service before coming to court.

In the Court's view, the taxpayers are entitled to this alternative unless they are technically barred by some variance from this relief and the stated basis in the claim for refund. If such matter cannot be resolved by the parties, plaintiffs are to present any arguments and evidence they have as to the availability of the 481(b)(2) limitation within ten days of this order. Defendant will have an additional ten days to reply.

It is so ordered.

---

7. In keeping with the sometimes inconsistent tax treatment of partnerships by the Code, i. e., sometimes as an entity and sometimes as a mere conduit to the partners, the $3,000 increase in taxable income mentioned in 481(b) refers to an increase in the individual partners' taxable income, not to the partnership's taxable income. Thus, the conduit approach appears to a limited extent in relation to section 481, although the entity approach is taken for the other purposes of 481. *See* Treas.Reg. § 1.481–2(c) (5) (i).