Eldo GROGAN and Mrs. Effie Grogan,
Plaintiffs-Appellants,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 72-2791.

United States Court of Appeals,
Fifth Circuit.

March 16, 1973.

Rehearing Denied April 9, 1973.

W. Woodrow Stewart, Joe K. Telford, Gainesville, Ga., for plaintiffs-appellants.

John W. Stokes, Jr., U. S. Atty., Julian M. Longley, Jr., Asst. U. S. Atty., Atlanta, Ga., Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Dennis M. Donohue, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

"It must often be said of the Internal Revenue Code of 1954, that of all the good intentions with which the road to hell is paved, this represents the best. Certainly the intention of Section 481 to codify case law and administrative interpretation is a pavement block all its own. Hopefully, the courts will offer judicial arbitration of interpretations of the statute in the near future. In the meantime, we

must live with codified confusion instead of uncodified chaos."

—William H. Fletcher [1]

■ Many courts have already faced the task of interpreting Section 481,[2] and this is yet another case raising novel questions regarding the application of that statute. The precise issue before us is whether the transformation of a taxpayer's interest in pre-1954 inventories and receivables—from that of a sole proprietor to that of a partner with a 91.6 percent interest in a partnership that now owns the items—justifies including those items when computing taxable income at the time Section 481 adjustments are made, even though those amounts would have been excluded had taxpayer's sole proprietor status continued unchanged.[3] The question seems never to have arisen before, and its resolution is not easy. The district court, 346 F.Supp. 564, held that the partnership was a new entity, distinct from the individual taxpayer, and that therefore taxpayer did not strictly satisfy Section 481's terms and conditions and was not entitled to exclude the pre-1954 amounts. We disagree, and we find that the policies implicit in the statute are better served by allowing taxpayer to exclude from consideration in the year of change those partnership inventories and receivables that were previously owned by tax-

payer and that were on hand before the statute took effect in 1954.

## I. BACKGROUND [4]

The central problem at which Section 481 is directed is the potential over-taxation, under-taxation, or loss (for income tax purposes) of items such as inventories and accounts receivable at the time a taxpayer changes his method of reporting. When a cash-basis taxpayer switches to the accrual basis, for example, the following problem is likely to arise:

"If in the year of change the taxpayer deducts his opening inventory and does not report as income accounts receivable at the close of the preceding taxable year, [absent some adjustment] there is a double deduction of the inventory to the extent it was paid for and deducted in previous years, and an entire omission from income of the accounts receivable at the close of the last taxable year in which the cash basis was used." [5]

To meet this problem before Section 481 was enacted in 1954, the Commissioner adopted the practice of granting his consent to a voluntary change in accounting methods only if the taxpayer agreed to transitional adjustments to prevent items from being taxed twice, deducted twice, or omitted altogether.

---

1. Fletcher, Section 481: Changes in Accounting Methods, N.Y.U. 18th Inst. on Fed. Tax 161 (1960).

2. *See, e. g.,* cases compiled in 2 Mertens, Law of Federal Income Taxation §§ 12.21, 12.21a.

3. The court below stated the issue as follows:

"In light of the facts and arguments, the Court is presented with this novel question, which both parties agree is not governed by any existing precedent: *Where a person who has operated a business as a sole proprietorship joins with other persons to operate the same business as a partnership and where the former sole proprietor owns an interest of more than 90% in the capital and profits of the partnership, is the partner-*

*ship a continuation of the sole proprietorship for the purposes of I.R.C. § 481(a) so that pre-1954 inventories and accounts receivable of the proprietorship may be credited against the partnership's inventories and accounts receivable in 1963, the year in which the government changed the partnership's accounting method from cash to accrual?"*

4. For an excellent "capsulated discussion of the statutory-decisional background" of Section 481 see Commissioner v. Welch, 5 Cir. 1965, 345 F.2d 939, 942–943. *See also* Yager, The Dilemma Under Section 481, N.Y.U. 16th Inst. on Fed. Tax 565, 566–569 (1962).

5. 2 Mertens, Law of Federal Income Taxation § 12.21 at 100.

*See, e. g.,* American Automobile Ass'n v. United States, 1961, 367 U.S. 687, 81 S. Ct. 1727, 6 L.Ed.2d 1109. Following a period of uncertain and inconsistent treatment of cases where the change was not voluntary,[6] the uniform rule emerged that "when the Commissioner compelled the change in the method of accounting, adjustments could not be required as to prior years."[7] *E. g.,* Commissioner v. Dwyer, 2 Cir. 1953, 203 F. 2d 522.

Specifically taking note of the state of the law as judicially interpreted,[8] the Congress enacted Section 481 of the Internal Revenue Code of 1954:

§ 481. Adjustments required by changes in method of accounting

(a) General rule.—In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")—

(1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

(2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.[9]

(b) Limitation on tax where adjustments are substantial.— . . . .[10]

We have previously said of this statute,

"By § 481 the 1954 Code expressed the legislative policy that no item should be omitted and no item should be duplicated as a result of a change in a method of accounting or reporting income for taxation. The provisions were to apply both in the case where the taxpayer voluntarily changes his accounting method with the consent of the Commissioner and also in the case where a change in the method is required by the Commissioner."

Commissioner v. Welch, 5 Cir. 1965, 345 F.2d 939, 942. But the statute clearly left intact the case law holding that changes in accounting and reporting *not* initiated by the taxpayer could not justify making adjustments as to *pre-1954* amounts. By its very terms the statute requires that

"there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply[11] unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer."

---

6. *Compare* Ross v. Commissioner, 1 Cir. 1948, 169 F.2d 483, *with* Fowler Bros. & Cox, Inc. v. Commissioner, 6 Cir. 1943, 138 F.2d 774. *See also* Goodrich v. Commissioner, 8 Cir. 1957, 243 F.2d 686.

7. Commissioner v. Welch, 5 Cir. 1965, 345 F.2d 939, 942.

8. *See* S.Fin.Comm.Rep. on H.R. 8300, 83d Cong., 2d Sess., U.S.Code Congressional & Administrative News at pp. 4696–4697 (1954) ; H.R.Rep. No. 1337, H.R. Ways & Means Comm.Rep. on H.R. 8300, 83d Cong., 2d Sess., U.S.Code Congressional & Administrative News at 4075 (1954).

9. The language reading "unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer" was added by the Technical Amendments Act of 1958, Title I of Pub. Law 85–866, § 29(a)(1), and made retroactive to January 1, 1954. *Id.* § 29(d) (1). *See also id.* § 29(d)(2).

10. Subsection (b) contains various limitations on the amounts by which liability for taxes can be increased by using subsection (a) and sets out procedures for "softening" the tax blow when subsection (a) is applied.

11. The new provisions apply to taxable years beginning after December 31, 1953, and ending after August 14, 1954, the date of the enactment of the 1954 Code. 26 U.S.C. § 7851(a)(1)(A).

The impact of the statute is clearly to allow some amounts of income to escape taxation. Where the taxpayer had inventories or accounts receivable on hand on December 31, 1953, for example, those amounts cannot be used to compute Section 481 adjustments when the taxpayer later changes his method of reporting *unless* the taxpayer initiates the change. Congress was well aware of this result when it enacted the statute,[12] and the Senate Finance Committee report on this section of the Code expresses an unequivocal intention not to impose a burden, as to pre-1954 items, "that would be harsher on taxpayers in most instances of involuntary change than the results of recent court decisions."[13]

With that understanding of the effect Section 481 may have in some circumstances, we turn now to the particular facts of the case before us.

## II. THE OPERATIVE FACTS

Taxpayer, Eldo Grogan,[14] is a Georgia poultry farmer who beginning sometime prior to 1950 operated as a sole proprietor a business that had (1) a broiler-growing portion, and (2) a feed mill portion. He kept his books and records and filed his income tax returns on the cash receipts and disbursements method of accounting. Taxpayer has always used the calendar year as his annual accounting period.

On December 31, 1953, taxpayer's sole proprietorship had accounts receivable totaling $86,957.56 for poultry sold, accounts receivable totaling $172,545.69 representing feed and chickens furnished to contract growers, and a feed inventory of $2,000. There were no accounts payable on that date.

In November of 1959, taxpayer's wife and her brother, William Mills, as trustee for taxpayer's three minor children, formed a partnership known as the Grogan Poultry Company. The Grogan Poultry Company acquired the broiler-growing portion of taxpayer's business. The Grogan Poultry Company used the accrual method of accounting.

On January 2, 1962, taxpayer and his brother, A. J. Grogan, as trustee for taxpayer's three minor children, formed a partnership known as the Grogan Feed Company. Taxpayer contributed the feed mill portion of his proprietorship to the Grogan Feed Company. On the same day, taxpayer made gifts of $6,000 to each of his three minor children and permitted his brother, as trustee for the children, to invest the $18,000 total by purchasing a "share" of the Grogan Feed Company. As a result of these transactions, taxpayer owned a 91.6 percent interest in the Grogan Feed Company and his children owned the remaining 8.4 percent interest. The Grogan Feed Company elected to use the cash receipts and disbursements method of accounting.

The Grogan Feed Company sold practically all of its feed to the Grogan Poultry Company. Because it used the accrual method of accounting, the Grogan Poultry Company deducted the amounts of its purchases in the year of purchase and carried them on it books as accounts payable until paid. Because it used the cash basis method of accounting, the Grogan Feed Company did not report its sales to the Grogan Poultry Company until the accounts were actually paid.

In 1963 the Commissioner of Internal Revenue examined the tax returns filed by taxpayer and by the Grogan Feed Company for the years 1959 through 1962. The Commissioner made certain adjustments to reflect income but did not change the method of accounting used by the Grogan Feed Company.

In 1966 the Commissioner examined taxpayer's individual returns and the Grogan Feed Company's partnership re-

---

12. *See* note 8 *supra.*

13. S.Fin.Comm.Rep. on H.R. 8300, *supra* note 8, at 4697.

14. "Taxpayer" refers to Eldo Grogan. His wife, Effie Grogan, is a party to this action only because joint returns were filed for the years in question.

turns for the years 1963 and 1964. Pursuant to Section 446(b) of the Internal Revenue Code of 1954, the Commissioner changed the partnership's method of accounting for 1963 and all future years from the cash method of accounting to the accrual method. The Commissioner asserted that the change was necessary because the cash method of accounting did not properly reflect the partnership's income. Invoking Section 481(a), the Commissioner included *all* of the Grogen Feed Company's receivables, as of December, 1963, as already accrued income. It is stipulated that some of these items were attributable to pre-1954 years, *i. e.*, they were accrued when taxpayer was still operating as a sole proprietor. The Commissioner's Section 481(a) adjustments resulted in additional income in the amount of $159,011.57 being included in the Grogan Feed Company's partnership return.

Based on these adjustments, the Commissioner assessed tax and interest against taxpayer for his distributive share of the partnership's additional income.[15] Taxpayer paid the additional income taxes, penalties, and interest in the total amount of $123,330.93 then filed a claim with the Internal Revenue Service for a refund. Following the denial of that claim, taxpayer filed this action. The court below, acting on stipulated facts, entered a judgment denying the refund, and this appeal followed.

## III. THE DISTRICT COURT'S REASONING

The United States District Court recognized the central issue presented by this case,[16] and stated the positions of the parties regarding the resolution of that issue as follows:

"Plaintiffs argue that under section 481, defendant had no right to include in Grogan Feed Co.'s partnership income for 1963 its inventory and deferred receivables as of December 31, 1963, without giving credit for the inventory and deferred receivables of Eldo Grogan's proprietorship as of December, 1953. Defendant contends that the Grogan Feed Co. partnership is, for the purposes of section 481(a), a distinct entity, *i. e.*, a "taxpayer", separate from its individual partners and different from its predecessor sole proprietorship; that, since the partnership did not exist prior to 1962, no portion of the adjustment in dispute can actually be attributed to pre-1954 receivables of the partnership, and, thus, the partnership was due no credit for such items."

Finding no cases in point, the court turned for guidance to three "somewhat analogous" cases: Pittsfield Coal & Oil Co., 25 Tax Ct.Mem. 11 (1966); Estate of Biewer, 41 T.C. 191 (1963); and Ezo Products Co., 37 T.C. 385 (1961). In each of these cases a successor in interest to one who had owned receivables in 1953 was denied the benefit of the exclusionary provision of Section 481(a) when adjustments were later made to the successor's returns. The court below correctly read these three cases to stand for the general proposition that a new taxable entity, separate and distinct from the previous owner of pre-1954 receivables, cannot invoke the exclusionary language of Section 481(a).

Recognizing that partnerships are sometimes treated by the Code as "entities"[17] and at other times as mere "conduits"[18] to the partners, the District Court nevertheless concluded that the Grogan Feed Company partnership

15. A partnership itself is not subject to income tax. 26 U.S.C. § 701. Rather, each partner is taxed on his distributive share of the partnership's income, regardless of whether it is actually distributed. *See* 26 U.S.C. § 702(a); Treas.Reg. § 1.702–1(a).

16. *See* note 3 *supra*.

17. *See, e. g.*, 26 U.S.C. § 703(b); Demirjian v. Commissioner, 3 Cir. 1972, 457 F.2d 1, 5–6; Brookshire v. Commissioner, 4 Cir. 1960, 273 F.2d 638; Swartz v. Commissioner, 42 T.C. 859 (1964).

18. *See, e. g.*, 26 U.S.C. §§ 701, 702.

"is not for the purposes of section 481 a mere continuation of its predecessor proprietorship, but a separate entity not entitled to the benefit of its predecessor's pre-1954 taxable years . . . " Based on this reasoning, the court held that Section 481(a) justified adjusting taxpayer's income for the year of change without excluding the pre-1954 amounts. Judgment was entered accordingly, and the ameliorative provisions of Section 481(b) were then applied.[19]

## IV. THE APPLICABLE LAW

As was the District Court, we are unable to discover any previously decided cases that are dispositive of the precise issue before us. We disagree with the District Court, however, regarding the approach to be used in determining whether taxpayer can invoke the exclusionary provisions of Section 481(a). The court below reasoned that because a partnership is sometimes considered a "taxpayer" under the Code, the use of the word "taxpayer" in Section 481(a) must, on the facts of this case, refer to the partnership itself. That premise led to the conclusion that because the partnership did not own the amounts in question on December 31, 1953, the exclusionary provisions of Section 481(a) are unavailable. We disagree with this approach, and we find that to allow the labeling of the successor's status to govern the issue of tax liability is to exalt form over substance.

The proper inquiry is whether the person who will be liable for the tax occasioned by Section 481 adjustments can invoke the exclusionary provisions of Section 481(a). The obvious import of the exclusionary language of Section 481(a) is to excuse from taxes on pre-1954 receivables and inventories any person who (1) owned those amounts on December 31, 1953, and (2) would be liable for taxes on them solely because of a Section 481 adjustment not initiated by the taxpayer. The unfairness that Section 481 was trying to avoid would not be availed if Grogan, as an individual taxpayer, is not to be treated as such because he became a partner. To put the matter in its clearest light, it is undisputed that if Grogan had sold 8.4 percent of his receivables, he would nonetheless be entitled to claim the benefit of the Section 481(a) exclusion for pre-1954 amounts as to the remaining 91.6 percent.

This approach is entirely consistent with the cases relied upon by the District Court. None of the prior cases have involved a change in form from an individual to a partnership. Rather, the benefit of Section 481(a)'s exclusion for pre-1954 amounts has been denied only where the transmutational change in status was from a sole proprietorship to a corporation,[20] from a sole proprietorship to a decedent's estate,[21] or from a partnership to a corporation.[22] In each of these instances, *the successor was itself taxable* on the amounts it had acquired. But the interests of a shareholder and of a sole proprietor are of different species, as is also true of an estate based upon the holdings of a decedent. Here, however, the interest as partner was the same as it was as proprietor, at least for Section 481 tax treatment. Both before and after Grogan formed the partnership, he was personally liable for any tax upon the receivables—only the percentage of his ownership has been altered by the change in status.

The benefit bestowed by Section 481(a)'s exclusionary clause is personal to the one who owned the amounts in pre-1954 years. The partnership's adjusted income may indeed include the

---

19. *See* note 10 *supra.* Taxpayer is satisfied with the court's application of Section 481(b) and does not appeal from that part of the judgment.

20. Pittsfield Coal & Oil Co., 25 Tax Ct. Mem. 11 (1966).

21. Estate of Biewer, 41 T.C. 191 (1963).

22. Ezo Products Co., 37 T.C. 385 (1961). *See also* Dearborn Gage Co., 48 T.C. 190 (1967).

entire amount of income added by reason of the Section 481 adjustment. But when computing the individual tax liability of the partners, Grogan, and only Grogan, may claim the Section 481(a) exclusion, for only Grogan owned the receivables prior to 1954. We do not read or apply Section 481(a) in a semantic seance, finding that "a partnership is not a proprietorship" and therefore the statute's exclusionary effects are to be given no substance. Instead, we focus on the real out-of-pocket taxpayer and find him to be Grogan, be he a 100 percent proprietor or a 91.6 percent partner.

The principal intent on the part of Congress in enacting Section 481 was to ensure that after 1954 no item should escape taxation or be over-taxed or under-taxed at the time a taxpayer changes his method of accounting or reporting income, regardless of who initiated the change.[23] But we cannot overlook the clear expression in the statute of a secondary intent to excuse liability for taxes on pre-1954 amounts that become taxable solely by reason of Section 481 adjustments where (1) the *taxpayer* owned the amounts before 1954, and (2) the taxpayer did not initiate the change. The primary purpose is to prevent either inequitable taxation or windfalls from accruing to taxpayers. The government here would have us disregard the secondary intent of the statute and award the government a windfall of its own.

In wrestling with this problem, the Congress knew that a cut-off date would involve a windfall.[24] It may not have measured meteorologically the statute's tornadic impact in every case, and it may not have forecast this exact chicken-farmer case. But the Congressional scissor-hold that threw out pre-1954 inventories and receivables was not a foul throw—it was a permissible pinning down, openly seen and openly arrived at by the Congress, of all such future amounts.[25] Congress knew that there were golden eggs that it would neither count nor recoup,[26] but in order to pluck the feathers of varying hues from all future pullets with equity when accounting changes were made, either voluntarily or forced, Congress decided that a few Grogans would be able to feather their nests. A temporary disequilibrium was to be permitted in order to establish a future certainty and tranquility when the winds of accounting changes swept the tax atmosphere.

The case must be reversed and remanded to the District Court for a recomputation of Eldo Grogan's proper tax liability in accordance with this opinion.

Reversed and remanded.

---

23. Commissioner v. Welch, 5 Cir. 1965, 345 F.2d 939; Graff Chevrolet Co. v. Campbell, 5 Cir. 1965, 343 F.2d 568. *Cf.* Falk v. Commissioner, 5 Cir. 1964, 332 F.2d 922.

24. "We have seen that under the [prior law] if the Commissioner forced a taxpayer to change his *accounting method* from cash to accrual, the taxpayer would escape forever taxation upon the inventory or *accounts receivable* which existed at the beginning of the year of change."
Yager, *supra* note 4, at 568–569.

25. "The section included, however, a very important limitation upon the principle that income should not be omitted and deductions should not be duplicated. Section 481(a)(2) created an "Iron Curtain," December 31, 1953, for calendar-year taxpayers, by providing that adjustments to income for the year of change should be limited to those which are attributable to years subject to the 1954 Code. By this provision, Congress in effect forgave the tax liability which should have been paid upon inventories and accounts receivable which had been accumulated for years by cash-basis taxpayers."
Yager, *supra* note 4, at 569–570.

26. "[I]t seems clear from the statute and the appropriate Committee Reports that Congress fully realized that, by creating the December 31, 1953 cut-off date in Section 481, it was permitting a taxpayer to avoid taxation on pre-1954 inventory completely . . ." Yager, *supra* note 4, at 573.